**Larry KRANTZ, et al., Plaintiffs,**

v.

**Richard SCHLESINGER, et al., Defendants.**

**No. CV–86–1637.**

United States District Court, E.D. New York.

Nov. 16, 1987.

Larry H. Krantz, Flushing, pro se.

Larry H. Krantz, Flushing, for plaintiffs.

Summit Rovins & Feldesman by Ronald E. DePetris, New York City, for defendants.

MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Plaintiffs, subscribers to an agreement to buy apartment units in the Mendocino Green Complex, brought suit against the sponsor of the offering plan to convert the complex to a condominium development. They allege violation of 18 U.S.C. §§ 1961–68 (RICO) predicated upon alleged commission of mail fraud incident to two schemes by defendants to abandon the plan. Fraud

and breach of contract under state law are also alleged. The schemes to defraud were allegedly directed against plaintiffs and the New York State Attorney General.

Defendants made a motion to dismiss, and plaintiffs were given leave to amend the complaint. In March of this year, defendant's motion to dismiss the amended complaint was denied. Also denied was defendant's application for certification of an order allowing an interlocutory appeal.

Defendants now renew their motion to dismiss the amended complaint. Fed.R. Civ.P. 12(b), (h). For reasons stated below, plaintiffs' federal claim must be dismissed for failure to adequately plead the continuing criminal enterprise requirement of RICO, 18 U.S.C. §§ 1961(4), 1962, and for lack of subject matter jurisdiction.

## I. FACTS

Plaintiffs' civil RICO claim arises from an agreement with defendants Richard Schlesinger, doing business as Wags Realty, a sole proprietorship; Quest-Co. Ltd., a corporation and licensed real estate broker; and Baldwin Townhouse Company, a general partnership including Richard Schlesinger. Defendants are referred to collectively as the "sponsor" of the offering plan.

In March, 1985, plaintiffs executed an agreement with defendants to buy an apartment in the Mendocino Green Complex, which was then owned by Baldwin Townhouse. Quest–Co. Ltd. was the selling agent for the units. The purchase agreement contained the terms of the condominium offering plan. It provided for certain situations under which the plan could be abandoned, including the "... existence of a defect in title which cannot be cured except by litigation or otherwise at a cost to the sponsor of less than $50,000 ...".

Later that month, the sponsor filed an amendment to the plan, declaring it effective. After having difficulty obtaining approval from the Nassau County Planning Commission for the subdivision of the complex into separate tax units, the sponsor submitted a form to the New York State Attorney General's office abandoning the plan. The stated reason for abandonment was the cost of compliance with subdivision requirements of the Nassau County Planning Commission.

In March, 1986, the Attorney General rescinded the sponsor's attempted abandonment, finding that the sponsor had failed to substantiate the basis for abandonment. Subsequent to the filing of the amended complaint in this action, the Attorney General conducted a more thorough investigation, finding that defendant's conduct constituted a fraud on the purchasers and the Attorney General.

The majority of aggrieved purchasers have settled with defendants, allowing the sponsor to convert the complex into a cooperative. *Annunziata v. Schlesinger,* No. 86–3511 (Sup.Ct., Nassau Cty., Sept. 16, 1986). Plaintiffs have refused to participate in this settlement.

The amended complaint alleges that defendants, individually and collectively, are enterprises within the meaning of RICO, 18 U.S.C. § 1961(4), and that they have knowingly and wilfully participated in the affairs of these enterprises. The alleged pattern of racketeering activity consists of schemes to abandon the offering plan so that a new plan could be submitted later at a higher price, of defrauding prospective buyers, including plaintiffs, and of defrauding the Attorney General. The sponsor purportedly used the requirements imposed by the Nassau County Planning Commission as a way to rescind its legal obligations under the plan, misrepresenting, through fraudulent mailings, what compliance with the requirements would entail.

## II. CONTINUING ENTERPRISE REQUIREMENT

In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court held that a violation of 18 U.S.C. § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 496, 105 S.Ct. at 3285. In a footnote elaborating on the pattern element, the court

emphasized the necessity of a continuing relationship. It wrote:

> ... the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity" § 1961(5) (emphasis added) ... As the Senate Report explained: ... The infiltration of legitimate business normally requires more than "one racketeering activity and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." (Senate Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Sedima,* 473 U.S. at 496, n. 14, 105 S.Ct. at 3285 n. 14.

Each circuit has since considered the question of standards for pleading a valid RICO claim, attempting to implement *Sedima's* directive to create a standard for a pattern based on "continuity plus relationship." This has been difficult, in light of the fact that *Sedima* suggested that while narrowing the scope of RICO was the job of Congress, there are dangers in the divergence of RICO from its original intent due to the increasing breadth of predicate offenses. *Id.* at 500, 105 S.Ct. at 3287–88.

One circuit has held that if predicate acts are all committed in furtherance of a single scheme, there is insufficient continuity to meet the pattern requirement. *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986.) In another the predicate acts do not need to occur in different criminal episodes or schemes. *Bank of America v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986).

Several circuits have taken a middle ground. In *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986), the court stresses that the pattern requirement is a standard, not a rule, holding that "... [r]elevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries ..." *Id.* at 975–76. In *Morgan,* the court found that although the acts of mail

fraud were distinct, some relating to separate foreclosure sales, and others relating to fraudulent statements made in connection with a loan transaction, they were ongoing over a period of nearly four years, thus satisfying the continuity and relationship aspects of the pattern requirement. *Id.* at 976.

■ The Second Circuit requires continuity for both the pattern of racketeering and the enterprise itself. An enterprise with a single purpose, such as fraud, can provide the basis for a Section 1962(c) violation only if the purpose has no obvious terminating goal or date. *United States v. Ianniello,* 808 F.2d 184, 191–92 (2d Cir.1986). In *Ianniello,* the enterprise continuously skimmed profits from bars and restaurants that it owned and operated in Manhattan. The court found a broad pattern of racketeering activity in the conduct of the enterprise affairs—including predicate acts of mail fraud, bankruptcy fraud, and tax evasion—which also supplied the continuity element, since the enterprise was a continuing operation. *Id.* at 190–91.

The continuing enterprise requirement was not satisfied, however, in *Beck v. Manufacturers Hanover Trust,* 820 F.2d 46 (2d Cir.1987), in which the plaintiff alleged a three phase conspiracy to sell United States collateral at an artificially low price, defrauding bond-holders, and depriving the government and people of Mexico of their share of the proceeds of the sale of the collateral. *Id.* at 49. Although the court found that the two related acts of mail and wire fraud satisfied the pleading requirement for a pattern of racketeering activity, the amended complaint was held to be insufficient, since the enterprise had only one straightforward short-lived goal—the sale of the collateral at a reduced price, and it ceased functioning at the conclusion of the sale. *Id.* at 51. The court stated:

> An enterprise is a groups of persons associated together for a common purpose of engaging in a course of conduct ... proved by evidence of an ongoing organization (citations omitted) ... This circuit requires that, under Section 1962(c), the enterprise be a continuing

operation and that the [predicate] acts be related to the common purpose.

*Beck,* 820 F.2d at 51, quoting *Ianniello,* 808 F.2d at 191. *See also Albany Insurance Co. v. Esses and Shoe Tastics, Inc.,* 831 F.2d 41 (2d Cir.1987) (dismissing a civil RICO claim even though the mail fraud and arson constituted a pattern, because the defendant's one obvious goal—inducing the plaintiff to pay a false insurance claim —did not constitute a continuing enterprise with regard to criminal activity).

## III. LACK OF CONTINUING ENTERPRISE

■ Under the standard set forth in *Ianiello* and *Beck,* plaintiffs have adequately pleaded a pattern of racketeering activity. They have alleged multiple episodes of mail fraud, committed in a scheme to defraud plaintiffs and the Attorney General. The acts, even if they were only conducted from 1985, when the first reference to abandonment was made, until 1986, when the Attorney General rescinded the abandonment, were continuous enough over a period of time to establish a pattern of racketeering activity.

■ Plaintiffs' amended complaint is deficient, however, in its failure to sufficiently allege the continuity of the enterprise's criminal activity. Plaintiff alleges an enterprise—a unit involved with the commencement and abandonment of an offering plan—which defrauded plaintiffs and the Attorney General, and has ceased to function in terms of any criminal activity. The fact that it has ceased to function by operation of law due to the state court settlement is not relevant, since there is no allegation that absent this settlement, this enterprise was to engage in ongoing criminal activity after the plan of abandonment.

The *Esses* court rejected the argument urged by plaintiffs that the requirement of continuity of criminal activity or purpose is not applicable where the enterprise is a legitimate business. *Esses* at 41. *See also*

*Mastercraft Industries v. Breining,* 664 F.Supp. 859 (S.D.N.Y.1987) (dismissing complaint alleging fraudulent failure to perform contractual obligations in connection with a real estate transaction for failure to meet the requirement of "continuity of criminal purpose," continuing enterprise element not satisfied merely because the defendant's lawful business is continuing).

## IV. CONCLUSION

Plaintiffs' RICO claims are dismissed as to all defendants with prejudice.

At oral argument, the parties stipulated that all plaintiffs' state claims against all defendants except Schlesinger are dismissed on the merits. Plaintiffs will amend the complaint as to defendant Schlesinger and plead all state law claims against defendant Schlesinger. Jurisdiction will be based on a theory of diversity. Defendant Schlesinger retains the right to challenge the complaint on diversity and all other grounds. Plaintiffs agree that all claims against other defendants are dismissed with prejudice.

So ordered.