**COUNTY OF SUFFOLK, a municipal corporation, Robert Alcorn, Christopher S. George, Fred Harrison, Peter Maniscalco, William P. Quinn, and Custom Extruders, Inc., on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**LONG ISLAND LIGHTING COMPANY, Stone & Webster Engineering Corp., Charles R. Pierce, Wilfred O. Uhl, Charles J. Davis, and Andrew W. Wofford, Defendants.**

No. 87–CV–646 (JBW).

United States District Court, E.D. New York.

May 18, 1988.

Hill Betts & Nash by Bernard Persky, Kenneth McCallion, New York City, E. Thomas Boyle, Suffolk County Atty., Hauppauge, N.Y., for plaintiffs.

Shea & Gould by Ronald H. Allenstein, Sheldon Karasik, New York City, for the Individual defendants.

Susan E. Silverman, Hicksville, N.Y., for defendant Long Island Lighting Co.

Mudge Rose Guthrie Alexander & Ferdon by Laurence V. Senn, Jr., Judith A. Lockhart, New York City, for defendant Stone & Webster Engineering.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

In its 96–page complaint, the County of Suffolk and the class of individual ratepayers sue the Long Island Lighting Company and others, claiming that a variety of frauds, beginning in 1974 and continuing into the present, were committed by LILCO and others associated with it. These frauds, it is alleged, involved the Shoreham and Jamesport nuclear power plant projects and were designed to obtain higher rates and other advantages for LILCO. Plaintiffs charge that LILCO repeatedly misled the New York Public Service Commission and succeeded in obtaining rate increases from the PSC which will continue into the indefinite future to be reflected on customers' bills. All of this is charged as a civil violation of the Racketeer Influenced and Corrupt Organizations Act, known as RICO. 18 U.S.C. §§ 1961, 1962(c), 1964(c).

Defendants now move to dismiss on the ground that RICO does not apply because (1) plaintiffs lack standing to sue under RICO, and (2) the charged pattern of racketeering activity does not relate to a continuing criminal enterprise. Fed.R.Civ.Proc. 12(b)(6).

## I. *Standing*

■ The standing argument has no merit. Plaintiffs cannot be categorized as indirect secondary victims of defendants' alleged fraud, because the PSC was in no sense a primary victim of that fraud. Rather, it is the instrumentality through which defendants are said to have perpetuated their fraud on its alleged real victims, the ratepayers. Thus *Carter v. Berger*, 777 F.2d 1173 (7th Cir 1985), on which defendants rely heavily, is not applicable, because in that case the county suffered direct economic injury in loss of taxes as a result of defendant's alleged fraud in bribing tax officials, and had standing itself to recoup its own losses, while the taxpayer-plaintiffs were only derivatively injured. New York State has taken a position in the instant litigation which supports this reasoning. Although not a party to the suit, it submitted a letter as amicus in an earlier phase of the litigation in which it emphasized that the whole purpose of the PSC's regulatory scheme is to protect the public. In a letter dated February 1, 1988, it declared, "if defendants are proved to have misled the Public Service Commission, an award of damages in this case would enhance, rather than conflict with, New York's regulatory scheme."

## II. *Continuing Criminal Enterprise*

■ With regard to the continuity issue, LILCO argues that, assuming the truth of the complaint, the Jamesport project has been terminated and disputes about the Shoreham project will be decided at a definite, but presently unknown, terminating date, because ultimately the Shoreham plant will either be in operation or will cease to exist. Plaintiffs counter that they have already paid billions of dollars because of fraudulently inflated rate bases, and that the fraudulently increased rates will continue into the indefinite future as a result of continuing frauds and past frauds.

The issue of a criminal enterprise has created serious problems for the courts in this and other circuits as they attempt the seemingly impossible task of expanding the criminal reach of RICO while contracting its civil grasp. In *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court reversed the Second Circuit's dismissal of a civil RICO claim and instructed the circuit that restriction of RICO in civil litigation was a matter for Congress, not the courts. Nevertheless, defendants and courts have continued to struggle to restrict civil RICO, relying in this circuit primarily on the requirement of "continuity" of a pattern of criminal activity. The Second Circuit cases have followed a "confusing" road. *Beauford v. Helmsley*, 843 F.2d 103, 108 (2d Cir.1988).

In *Beauford*, the latest but certainly not the last emanation on the subject, the court reviewed the precedents and laid down a rule requiring a non-"discrete" fraudulent scheme which is not "finite" as a predicate for a civil RICO complaint. It held:

a discrete, even if widespread, and a continuing even if finite [sic], scheme is [not] sufficient to permit a plaintiff to take advantage of RICO.

*Id.* at 110.

*Beauford* involved a complex "single" scheme to defraud tenants and purchasers of condominiums that will continue for some time even though there exists only a "finite number" of apartments. Presumably, all the apartments ultimately will be sold, and this, the court suggested, prevented the scheme from being sufficiently open-ended to permit a RICO recovery. *See also Krantz v. Schlesinger*, 683 F.Supp. 32, 35 (E.D.N.Y.1987) (condominium fraud; dismissed for failure to meet "continuity of criminal purposes" standard).

In the instant case, the dispute over Shoreham and its effect on the rate base is a continuing one that the parties agree may continue into the future until a date not now foreseeable with any precision. The increased rates on LILCO's electric bills cannot be considered passive after-effects of a past fraud, as defendants argue. The monthly collection of fraudulently inflated payments constitutes active, continuing fraud, just as would continuing collection of vigorish by a loan shark in a criminal prosecution.

Even should Shoreham become operational or be extirpated from the face of the earth at some definate time in the future, frauds of the past ten years and those in the offing for the indefinite future will, according to plaintiffs' well-pleaded allegations, have continuing effects on LILCO's electric rates for many years to come. To extend the word "finite" to such an almost unbounded temporal period would require stretching language well beyond professionally acceptable limits. Except in the sense that all humanity and its works are "finite," the scheme charged does not fall within this classification.

Were the alleged scheme one of a criminal mob rather than LILCO, appeal from a conviction on continuity grounds would be given little credence. Although plaintiff's allegations are merely that, and establishing their factual basis may be difficult if not impossible, *Sedima* requires us not to give more credence to the continuity argument simply because it is made in a civil setting. Accordingly, defendant's motion to dismiss is denied.

Nevertheless, it is apparent that the law is unsettled. In *Beauford*, in what may be a unique event in this circuit's jurisprudence, a unanimous panel requested the case "be reheard en banc to clarify Second Circuit law." 843 F.2d at 110. It may be that this plea for help will be answered shortly and, if so, that explication may require a reversal of this order. Thus, an "immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292. The court so certifies to permit the Court of Appeals to allow an immediate appeal.

Any appeal from this order shall not stay any proceedings in the district court. *Id.* The case is set for trial in the fall. In view of its importance to the welfare of industry, government, and the inhabitants of Long Island, prompt disposition of the litigation by trial or motion is desirable.

So ordered.