COUNTY OF SUFFOLK, a municipal corporation, Robert Alcorn, Christopher S. George, Fred Harrison, Peter Maniscalco, William P. Quinn, and Custom Extruders, Inc., Plaintiffs,

v.

LONG ISLAND LIGHTING COMPANY, Stone & Webster Engineering Company, Charles R. Pierce, Wilfred O. Uhl, Charles J. Davis, and Andrew W. Wofford, Defendants.

UNITED STATES of America ex rel. W. Gordon DICK and John P. Daly, Jr., Plaintiffs,

v.

LONG ISLAND LIGHTING COMPANY, Charles R. Pierce, Wilfred O. Uhl, Charles J. Davis, and Andrew W. Wofford, Defendants.

Nos. 87–CV–646 (JBW), 88–CV–2065 (JBW).

United States District Court, E.D. New York.

March 23, 1989.

As Amended April 14, 1989.

Hill, Betts & Nash by Bernard Persky, Kenneth F. McCallion, Gregory W. O'Neill, James W. Johnson and Lawrence P. Kolker, New York City, and E. Thomas Boyle, County Atty. of Suffolk County, Hauppauge, N.Y., for plaintiff Suffolk County.

Vladeck, Waldman, Elias & Engelhard by Judith P. Vladeck, Karen Honeycutt and Julian Birnbaum, New York City, for individual ratepayer plaintiffs.

Bower & Gardner by James D. Harmon, Jr. and Michael Eng, New York City, for U.S.

Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano by George J. Farrell and Delores Fredrich, Uniondale, N.Y., and Edward T. O'Brien, County Atty. of Nassau County, Mineola, N.Y., for intervenor Nassau County.

Peter L. Zimroth, Corp. Counsel of City of New York (Peter Lehner, of counsel), New York City, for intervenor City of New York.

Reilly, Like & Schneider by Irving Like, Babylon, N.Y., and Flower & Plotka by Edward Flower, Bay Shore, N.Y., for plaintiff, Custom Extruders, Inc. and intervenors Business Ratepayer plaintiffs.

Marilyn A. Marlek, Bethpage, N.Y., and Cahill, Gordon & Reindel by Charles A. Gilman, New York City, for intervenor Grumman Corp.

Leibowitz & Peterson by Ira Leibowitz, Garden City, N.Y., and Parker, Chapin, Flatteau & Kimpl by Gary Neil Sazar, Jericho, N.Y., for intervenor Long Island Ass'n.

Lewis & Greer by Lou Lewis, Poughkeepsie, N.Y., for intervenor Shoreham–Wading River Cent. School Dist.

Shea & Gould by Michael Lesch, Ronald H. Alenstein and John G. Nicolich, New York City, for Individual defendants.

Susan E. Silverman, Hicksville, N.Y., for defendant Long Island Lighting Co.

Mudge Rose Guthrie Alexander & Ferdon by Laurence V. Senn, Jr., New York City, for defendant Stone & Webster Engineering.

Robert Abrams, New York State Atty. General's Office, New York City.

## AMENDED MEMORANDUM AND FEE ORDER

WEINSTEIN, District Judge.

## I. PROCEDURAL HISTORY

The settlement of this class action suit brought under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., has been approved as fair. See 710 F.Supp. 1428 (E.D.N.Y.1989). Prior opinions, memoranda and orders have described the litigation in detail. *See County of Suffolk v. Long Island Lighting Co.*, 685 F.Supp. 38 (E.D.N.Y.1988) (denying motion to dismiss); 710 F.Supp. 1405 (E.D.N.Y.1989) (discussing class certification issues); 710 F.Supp. 1406 (E.D.N.Y. 1989) (concerning hearing and briefing schedules); 710 F.Supp. 1387 (E.D.N.Y. 1989) (dismissing RICO claims of Suffolk County after a trial at which Suffolk obtained a verdict in its favor); 710 F.Supp. 1407 (E.D.N.Y.1989) (certifying class and appointing class counsel). *See also United States ex rel. Dick and Daly*, 710 F.Supp. 1485 (E.D.N.Y.1989) (dismissing False Claims Act claims of qui tam plaintiffs).

As part of the settlement and as indicated in this court's memorandum on the fairness of the settlement, the court is authorized to allocate fees and expenses up to $10 million.

## II. LAW

Attorney's fees and expenses are calculated using the "lodestar" method. This amount "represents the number of hours reasonably worked on a case multiplied by the reasonable hourly rate." *Wells v. Bowen*, 855 F.2d 37, 43 (2d Cir.1988). The rate should reflect "the prevailing rates in the district in which the court sits." *Polk v. New York State Dept. of Correctional Serv.*, 722 F.2d 23, 25 (2d Cir.1983). Fees are calculated by multiplying the number of billable hours by " 'the hourly rate normally charged for similar work by attorneys of like skill in the area.' " *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296, 1305 (E.D.N.Y.1985), *aff'd in part and rev'd in part*, 818 F.2d 226 (2d Cir.), *cert. denied sub nom. Schwartz v. Dean*, — U.S. —, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987) (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1140 (2d Cir.1983)). Once this figure is determined, "the district court in its discretion may adjust it upward or downward on the basis of frankly subjective factors ... includ[ing] 'the risk of litigation, the complexity of the issues, and the skill of the attorneys.' " *In re "Agent Orange"*, 611 F.Supp. at 1310 (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1140 (2d Cir.1983)).

The 'quality of representation' factor is intended to permit a district court ... to

reward 'particularly resourceful' legal work that 'secures a substantial benefit ... with a minimum of time invested'....

*Id.* at 1313. The court added:

> In considering whether to adjust the lodestar figure, a court may look to, among other things, (1) the result obtained, evaluated in terms of (a) the extent of possible recovery compared with the amount of actual verdict or settlement, and (b) the benefit conferred on the class, as well as (2) the efficiency of 'the professional methods utilized in processing the case.' *Lindy II*, 540 F.2d [102] at 118 [ (3rd Cir.1976) ].

*Id.* The court also noted that special considerations may favor an especially high multiplier where a relatively small number of hours spent resulted in a favorable settlement:

> Perhaps of even greater value as compensable skills are those related to settlement negotiation and settlement.

*Id.*

The Second Circuit has affirmed the use of a 2.26 multiplier for complexity, contingent risk, and quality of representation, including the benefit obtained for the class, counsel's efficiency, its skill, prior experience and standing and the quality of opposing counsel. *In re Warner Communications Securities Litig.*, 618 F.Supp. 735 (S.D.N.Y.1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Other courts have applied even larger multipliers where quality of representation and success achieved were among the factors considered. *See, e.g., Brewer v. Southern Union Co.*, 607 F.Supp. 1511 (D.Colo.1984) (3.35 multiplier); *Squillacote v. United States*, 626 F.Supp. 127 (E.D. Wis.1985) (3.0 multiplier); *In re Cincinnati Gas & Elec. Co. Securities Litig.*, 643 F.Supp. 148, 153 (S.D.Ohio 1986) (2.48 multiplier). Time spent which results in a public benefit may, in conjunction with other factors, justify a multiplier of 2 to 4. *In re Cenco, Inc. Securities Litig.*, 519 F.Supp. 322, 327 (N.D.Ill.1981).

■ Where a relatively small amount of legal work results in a settlement giving large benefits to class members and to the public, application of a multiplier is appropriate. *See In re "Agent Orange,"* 611 F.Supp. at 1313, 1328 (multiplier of 1.5 and 1.75); *In re Warner Communications Securities Litig.*, 618 F.Supp. at 747, 749 (2.26 multiplier); *Weinberger v. Flow General, Inc.*, [1984 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 91,541, 1984 WL 484 (S.D. N.Y.1984) (2.0 multiplier); *Fogel v. Chestnutt*, [1983–4 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 99,551, 1983 WL 1384 (S.D.N. Y.1983) (1.98 multiplier); *In re Alcoholic Beverages Litig.* 1983–1 Trade Cas. (CCH) ¶ 65,342, 1983 WL 1808 (E.D.N.Y.1983) (1.5 multiplier).

■ Attorneys are also entitled to reimbursement of out-of-pocket expenses. The disbursements must be: 1) "reasonable in amount and reasonably related to the interests of the class," and 2) adequately documented. *In re "Agent Orange,"* 611 F.Supp. at 1314.

## III. FEE ALLOCATIONS

### A. Attorney for Class

■ Judith P. Vladeck, Esq., is a distinguished member of the bar. She worked under great pressure, extraordinary hours at night and over weekends with her staff. Her task was a most difficult one for it involved not only negotiations with experts in esoteric fields, opposing counsel and the mediator, but the need to explain to her lay clients what she was doing. Some of the clients were demanding, antagonistic and even vituperative; many were highly emotional because of concerns about Shoreham, the nuclear power station. The quick and satisfactory conclusion of the negotiations and fairness hearings is in large measure due to the skill, tenacity, and devotion to the class of Ms. Vladeck and her associates.

The hours claimed are modest. Ms. Vladeck, for example, has eliminated the time charges of attorneys and paralegals who did not "spend significant amounts of time on the case." She did not charge for her own time "spent conferring with attorneys who represent utilities and were willing to share their expertise in the rate-making

process." Attorneys' time was replaced by paralegal time to the extent permitted by appropriate professional standards.

The time and hour charges claimed by Ms. Vladeck are entirely fair and reasonable. In many instances the court was able to directly observe the time spent and results reached; these observations support the time charges. A full daily log has been filed supporting these computations. The rates are the usual rates charged by Ms. Vladeck and her firm. Equivalent rates have been allowed to this firm in other cases. Because much of her work is for unions and others of limited affluence, her hourly rates are much lower than the rates of many lawyers in the New York area with less skill and experience.

The fact that the Vladeck firm, which is neither large nor affluent, has paid salaries for more than 1,500 hours of lawyer time reflects the extent of the risk associated with the representation of the plaintiff class on what is in effect a contingent fee basis. The firm has not been paid anything for time expended or out-of-pocket disbursements during the pendency of the case. Plaintiffs' counsel faced enormous risks in undertaking this litigation. The factual evidence of fraud was vigorously contested. The application of the federal RICO statute in the public utility ratemaking context was virtually unprecedented, and LILCO was obviously an implacable adversary with almost unlimited resources. Plaintiffs' counsel were able to achieve a favorable settlement despite an order of the court dismissing the RICO cause of action.

In view of the risks, plaintiffs' counsel is entitled to an appropriate multiplier. The multiplier chosen is modest, but it is justified by the need to reserve as much of the settlement for distribution among more than a million ratepayers and past ratepayers.

In addition, costs and disbursements claimed of $106,808.41 are reasonable. Much of this expenditure consisted of expert witness fees.

The amounts allowed are, as claimed, the following:

| Partners | | | |
|---|---|---|---|
| | Judith P. Vladeck | 703.25 × $275 | $193,393.75 |
| | Julian R. Birnbaum | 409.50 × $175 | 71,662.50 |
| | Karen Honeycutt | 638.75 × $150 | 95,812.50 |
| | Joseph J. Garcia | 10.50 × $175 | 1,837.50 |
| | Anne C. Vladeck | 15.50 × $175 | 2,712.50 |
| | Debra L. Raskin | 18.25 × $175 | 3,193.75 |
| Of Counsel | | | |
| | Roger J. Bernstein .. | 193.75 × $175 | 33,906.25 |
| Associate | | | |
| | Richard Dicker ...... | 15.00 × $175 | 2,625.00 |
| Paralegals and Law Clerks | | | |
| | Mary Churchill | 61.00 × $ 45 | 2,745.00 |
| | Joseph Hirsch | 40.75 × $ 45 | 1,833.75 |
| | Noemi Bonilla | 33.00 × $ 45 | 1,485.00 |
| | | TOTAL | $411,207.50 |
| Additional Sums | | | |
| Multiplier, Judith Vladeck | | —2 | $193,393.75 |
| Multiplier, Julian Birnbaum | | —1.5 | 35,831.25 |
| Multiplier, Karen Honeycutt | | —1.5 | 47,906.25 |
| Costs and disbursements | | | 106,808.41 |
| Total allowed to Judith Vladeck | | | $795,147.16 |

## B. Intervenors Who Oppose Settlement

■ A number of persons have been permitted to intervene even though they oppose the settlement. They have made from none to minimal contribution to the class. Nevertheless they seek substantial fees. Their applications are inconsistent with their positions. As the court pointed out in *In re Int'l House of Pancakes Franchise Litig.*, 1974–1 Trade Cases (CCH) ¶ 74,932 at 96,173, 1974 WL 842 (W.D.Mo.1974), *aff'd in part and remanded in part, Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975), "if the ... settlement is not fair, reasonable and adequate as [they] now [contend, they] are most inconsistent in applying for a fee...." Nevertheless, while recognizing that it may be an abuse of discretion to allow any fees for this group of attorneys, the court, as indicated below, does allow some fees. The opposition of counsel, orally and in briefs, did help clarify the issues at the fairness hearing. Arguably, therefore, they made some modest contribution to the settlement.

### 1. *Nassau County*

■ Nassau County has requested a total of $85,634.18. This is based on billing rates of $225.00 to $250.00 per hour for George J. Farrell, Jr., Esq., and $150.00 to $175.00 an hour for Dolores Fredrich, Esq. In addition, associates and paralegals were billed at the rate of $50.00 to $120.00 per hour. These rates are relatively modest considering the expertise of the lawyers. Moreover, no reimbursement was sought

for the County Attorney, Edward T. O'Brien, who is himself a distinguished attorney. He personally attended the hearings. Disbursements are also reasonable.

In considering this application, the court has given weight to the fact that the attorneys were, in effect, representing the county, many municipalities and a million-and-a-half of the residents and businesses within the county. The total sought by Nassau County is fair and reasonable and the full $85,634.18 is allowed without reduction. No multiplier has been requested or granted.

The amounts allowed are broken down by billing periods as follows:

Period ending December 31, 1988

| G.J. Farrell | 45.9 × $225 | $10,327.50 |
| D. Fredrich | 33.0 × $150 | 4,950.00 |
| J. Hepworth | 31.8 × $110 | 3,498.00 |
| E. Turrini | 7.2 × $ 50 | 360.00 |
| | | $19,135.00 |
| Disbursements | | 265.92 |
| | | $19,401.42 |

Period ending January 31, 1989

| G.J. Farrell | 48.3 × $250 | $ 9,660.00 |
| D. Fredrich | 91.9 × $175 | 11,487.50 |
| J. Hepworth | 12.9 × $120 | 1,548.00 |
| J. Hepworth | 3.7 × $110 | 407.00 |
| K.P. Farrell | .5 × $ 65 | 32.50 |
| | | $23,135.00 |
| Disbursements | | 912.44 |
| | | $24,047.44 |

Period ending February 28, 1989

| G.J. Farrell | 64.1 × $250 | $12,820.00 |
| D. Fredrich | 46.3 × $175 | 5,588.50 |
| J. Hepworth | 7.3 × $120 | 876.00 |
| R. Karpp | 9.1 × $115 | 1,046.50 |
| B. Hall | 1.1 × $ 85 | 71.50 |
| R.A. Nessler | 1.4 × $ 80 | 112.00 |
| | | $20,514.50 |
| Disbursements | | 934.00 |
| | | $21,448.50 |

Unbilled time and disbursements broken down to March 10, 1989 include $19,749 for the former and $987.82 for the latter. These figures are supported by adequate records.

### 2. *Grumann Corporation*

■ Grumann Corporation participated in the fairness hearings. Its counsel made a number of helpful suggestions with respect to notice, number of hearings and interpretation of the agreement. The amount sought is, however, excessive and grossly disproportionate to the effort and results.

The total sought is $219,729 for fees and $14,592.16 for costs, a grand total of $234,321.16. The work of Charles A. Gilman, Esq., included 131.00 hours at $280 per hour for a charge of $36,680. This charge and time is reasonable given the expertise of Mr. Gilman. Almost all the work on behalf of Grumman consisted of review of documents, attendance at hearings and consultations. There was no legal research or negotiation requiring any special skill.

The work of three other partners, three associates, four paralegals and eight persons listed under "miscellaneous" was largely unnecessary and duplicative. Charges for their time ranged from $42.00 to $335.00 per hour. These hourly rates are fair and reasonable. Allowing only the full time charges of the highest paid associate and paralegal is more than generous, given the result achieved. The associate's rate is $218.00 per hour and the hours 151.50, for a total of $33,027.00. The paralegal's rate is $65.00 per hour and the hours are 13.00, for a total of $845.00.

In addition, $14,592.16 is requested for various expenses. Part of these expenses should be included in overhead as part of hourly charges. While high, this amount will be allowed, but no further unbilled expenses will be considered.

A multiplier is claimed. It is not allowed. The charges for time are quite high. The work done was not of a quality higher than that to be expected of the firm involved. There was probably no risk since the client could be expected to pay for services rendered.

The total allowed is as follows:

| Partner | $36,680.00 |
| Associate | 33,027.00 |
| Paralegal | 845.00 |
| Expenses | 14,592.16 |
| Total Allowed | $85,144.16 |

### 3. *Individual Businesses*

■ Legal representatives of a number of businesses appeared at the settlement hearings and at the argument of related issues of law. An application for fees was received from Irving Like, Esq., a respect-

ed and well known attorney who specializes in environmental issues.

His affidavit and supporting papers indicates that he spent 194.2 hours. This expenditure of time was reasonable. His hourly rate of $200 per hour is modest compared with that of persons of like experience and skill. His disbursements include fees to Whitman and Ransom for drafting "LILCO Chapter 11 planning reorganization." This expenditure is disallowed. It had no bearing on any issue before the court. The remaining disbursements of $3,594.93 are approved. The following is allowed to Mr. Like:

| | |
|---|---|
| 194.2 × 200 | $38,840.00 |
| Disbursements | 3,594.93 |
| Total allowed to Irving Like | $42,434.93 |

Edward Flower, Esq., appeared as co-counsel with Mr. Like. Much of his work and that of Mr. Like were duplicative. There was no need, for example, for both to attend the same sessions of court. Nor was there any need for back-up assistance of other attorneys and paraprofessionals in his office. One hundred hours was more than adequate for the contribution of this attorney. A reasonable rate for his services is the same as that of Mr. Like, $200 an hour. His disbursements of $2,925.45 are reasonable. He is allowed the following:

| | |
|---|---|
| 100 × $200 | $20,000.00 |
| Disbursements | 2,925.45 |
| Total allowed to Mr. Flower | $22,925.45 |

Since Mr. Like and Mr. Flower shared this work they may arrange to share the fee allowed to both. It would be unfair, the attorneys may agree, to have one attorney bear the entire cost of the duplication of services in what was obviously a joint effort in briefing and arguing motions.

## C. Suffolk County

Suffolk County's fee application was dismissed by the court's fairness memorandum and order of March 22, 1989. For the reasons there stated, Suffolk County's application for a fee is denied.

## D. Plaintiffs in Qui Tam Action

The plaintiffs in the qui tam action made a minimal contribution to the settlement. Their independent qui tam action has been dismissed. *See United States ex rel. Dick and Daly v. Long Island Lighting Co.*, 710 F.Supp. 1485 (E.D.N.Y.1989). One who testified at trial struck the court as not fully credible. The other, whose deposition was taken, had an animus against LILCO and seemed less than fully reliable. Neither has demonstrated that the United States was overcharged. So far as the evidence to date indicates, the electricity was billed to the United States according to schedules approved by the PSC. No evidence submitted to date suggests that rate schedules were not properly approved by the PSC.

█ Plaintiffs are treated as experts consulted by their counsel, James D. Harmon, Jr., and his firm, Bower and Gardner. They are allowed $1,000.00 each, a generous amount considering their lack of positive contribution to the litigation.

█ Their counsel, representing the United States, is entitled to legal fees. It was contemplated that these fees would be paid out of the $10 million dollar legal fund. Even though counsel refused to sign the agreement of February 27, 1989, which provides for this fund, they did assist the class in negotiating the agreement and they did sign the preliminary settlement agreement.

Bower and Gardner requests a fee of $1,135,328, including a multiplier of 4.5. This is clearly excessive in view of the limited contribution made by the qui tam plaintiffs and their counsel to the class recovery. The value to the class of this work was but a small fraction of the value provided by the class attorney, Ms. Vladeck. Some credit, however, is due Bower and Gardner because they were involved in earlier stages of the litigation before Ms. Vladeck entered the scene.

█ No multiplier is warranted. While the research was somewhat unusual and the skill of the attorneys much higher than average, the contribution of this work to

the class recovery was minimal. The United States is recovering nothing based upon Bower and Gardner's theories. Contrary to counsel's argument, the United States is recovering only because it is being treated as if it were a member of the class in the related RICO litigation. *See County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1428 (1989).

The hourly rates are reasonable. They are somewhat lower than those for other first class commercial firms.

The time charges are broken into two periods, one to approximately the end of 1988 and one from then to the present. The latter period involved intensive settlement negotiations while the former period encompassed pretrial and trial activities.

The times charged seem reasonable and fair. They are supported by the usual daily time sheets. The amount claimed for expenses, $10,245.23, is fully supported. As shown by the summaries below, the total allowed to Bower and Gardner is $262,540.23

| Period to December 31, 1988 | | | |
|---|---|---|---|
| Steven J. Ahmuty, Jr. | 11.5 | × 250. | $ 2,875.00 |
| James D. Harmon, Jr. | 108.9 | × 250. | 27,225.00 |
| Barry G. Saretsky | 2.3 | × 250. | 575.00 |
| Michael J. Eng | 117.9 | × 175. | 20,632.50 |
| TOTALS | 232.6 | | $51,307.50 |

| Period to Present | | | |
|---|---|---|---|
| Stanley Fink | 7.1 | × 250. | $ 1,775.00 |
| James D. Harmon, Jr. | 318.21 | × 250. | 79,550.00 |
| Barry G. Saretsky | 3.3 | × 250. | 825.00 |
| Michael J. Eng | 358.9 | × 175 | 62,807.50 |
| Aaron F. Fishbein | 243.6 | × 150 | 36,540.00 |
| Steven J. Ahmuty | 65.3 | × 250. | 16,325.00 |
| Frank A. Farrell | 54.3 | × 50. | 2,715.00 |
| Claire Solomon | 9.0 | × 50. | 450.00 |
| TOTALS FOR FEES | 996.5 | | $200,987.50 |
| EXPENSES | | | 10,245.23 |
| TOTAL ALLOWED | | | $262,540.23 |

### E. Mediator

Kenneth R. Feinberg, Esq. is an adjunct professor at Georgetown Law School and a nationally recognized member of the bar with specialties in mass torts and criminal law. He is highly skilled in mediating complex legal disputes with difficult political and social components. With the consent of the parties he was requested by the court to mediate. Settlement of the litigation was in large measure due to his extraordinary efforts.

The fees charged by Mr. Feinberg for his services are reasonable and the rates and time shown commensurate with the usual charges for such services. The services rendered by Mr. Gomperts, his associate, were necessary because of the difficulty of the negotiations.

Mr. Feinberg would normally be entitled to a multiplier in view of his success and the contingency of a fee only upon creation of a settlement fund. He has waived a multiplier as part of his pro bono contribution. Accordingly, the full amount requested is allowed as follows:

| | | |
|---|---|---|
| Kenneth Feinberg | 289 × $400 | $115,600.00 |
| John S. Gomperts | 289 × $230 | 54,970.00 |
| Laurence Gresser | 2 × $155 | 310.00 |
| Disbursements | | 4,766.66 |
| Total | | $175,646.66 |

### F. Funds For Notice Advanced by LILCO

Notification of the class is the responsibility of the class representatives; they must advance the necessary funds. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 179, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974); 7B C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, § 1788, p. 283 (1986).

In this case it was obviously much less costly and more convenient to have LILCO mail notice to its almost one million customers through its computerized billing lists. Since it advertised widely in the weekly and daily papers in which notice was to be given, it was also more expeditious to have it handle these ministerial duties.

Counsel for the class agreed orally that the funds advanced by LILCO for these purposes would be reimbursed out of two funds. They are, first, the $50,000 obtained from defendant Stone & Webster Engineering Corp in settlement of the class's claims against it. Second, the remainder is to be furnished from the $10,000,000 fund for legal fees and expenses.

The cost and bills paid by LILCO in giving notice to the class amount to $352,135.86. $50,000 will be paid from the Stone and Webster settlement fund and $302,135.86 from the legal fee and expense fund.

### IV. REMAINDER OF FUND

In accordance with the fairness hearing memorandum and order, the remainder of

the $10 million dollar fund is to be paid into court for investment by the Clerk of the Court in six month treasury notes or as otherwise directed by the court. After paying the sums approved in this memorandum and order, the remainder will be held for disbursement of the class representative as legal fees and expenses approved by the court in protection of the interests of the class and in execution of the settlement agreement.

This order is stayed pending appeal.

So ordered.