The **NATIONAL BONDED WAREHOUSE ASSOCIATION, INC., et al., Plaintiffs,**

v.

The **UNITED STATES, et al., Defendants.**

**Court No. 87–02–00270.**

United States Court of International Trade.

Dec. 21, 1990.

---

4.  *See* cases cited *supra* note 2.

See also 718 F.Supp. 967.

Sandler, Travis & Rosenberg, P.A. (Ronald W. Gerdes and Gilbert Lee Sandler), for plaintiff Nat. Bonded Warehouse Ass'n, Inc.

Wallace, Engels, Pertnoy, Solowsky & Allen, P.A. (Sidney M. Pertnoy), for plaintiff Intern. Bonded Warehouse Corp.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney–in–Charge, Intern. Trade Field Office, Commercial Litigation Branch (John J. Mahon), for defendants.

## OPINION

RESTANI, Judge:

### Background

The court has been requested to approve settlement of $2.1 million in this class action. In addition, plaintiff's counsel, Sandler, Travis & Rosenberg, P.A. ("ST & R"), seeks to recover reasonable attorneys' fees and expenses from the resulting "common fund." This motion is opposed by International Bonded Warehouse Corporation ("IBWC"), which has filed an opposition to the application for attorneys' fees and expenses.

This case was brought by the National Bonded Warehouse and Cargo Association (formerly the National Bonded Warehouse Association) and others, challenging increases in the annual fees by Customs Services for the years 1985 through 1987. ST & R serves as legal counsel for the plaintiff association and brought the case as a class action with no formal guarantee of remuneration. Although it normally does not act on a contingency fee basis, in a related case, *White Rose Distributing Co., et al. v. United States Customs Service,* Court No. 87–02–00268, ST & R represented a limited number of individual clients based upon a contingency fee arrangement providing that, if successful, the firm

would be entitled to forty percent of the amount recovered. The contingency fee arrangement accepted by plaintiff association, which represents many members of the certified class, was one-third.

Plaintiff's counsel observes that the case at bar was one of first impression in this court. Never before had fees charged to warehouses been the subject of litigation. As a result, the statutory authority and the procedures to follow in such a case were not well defined. Furthermore, no class action suit had ever been brought in this court. Despite such legal obstacles, ST & R negotiated a settlement in the amount of $2.1 million.

### Discussion

### I. Approval for the Class Action Settlement

■■■■ Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the court. This procedural safeguard is necessary to protect the named plaintiffs, whose rights may not have been given due regard by the negotiating parties. *Collins v. Thompson,* 679 F.2d 168, 172 (9th Cir.1982); *Simer v. Rios,* 661 F.2d 655, 664 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). The standard by which a proposed settlement is to be evaluated is whether the settlement is fundamentally fair, adequate and reasonable. *Officers For Justice, et al. v. Civil Service Comm'n of the City and County of San Francisco, et al.,* 688 F.2d 615, 625 (9th Cir.1982) (citing cases), *cert. denied, sub nom. Byrd v. Civil Service Comm'n,* 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). The court's determination will necessarily involve a balancing of several factors which may include, *inter alia,* the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the ex-

tent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Id.* Ultimately the court's determination is nothing more than a delicate balancing of these factors, keeping in mind that voluntary settlement is the preferred means of dispute resolution.

■■■ In this case, the court considers the settlement fair and equitable for the following reasons. There was no opposition to the settlement, except that IBWC, the party opposing the claim for attorneys' fees, requested appointment to study the settlement. The court denied the request. IBWC's latest filings indicate that the settlement was "desirable" and "achieved in a relatively short period of time." Memorandum of Law in Opposition to Application for Attorneys' Fees and Costs at 2. Thus, there is no true opposition to the settlement.

As the case involved a difficult jurisdictional issue which was originally resolved against plaintiffs, the court must conclude that success on this issue at the appellate level is not a certainty and thus, there is a possibility of a recovery of zero.[1] The upper limit of recovery in the class action is in the neighborhood of three million dollars, exclusive of interest. As all issues both as to the merits and jurisdiction are of first impression, a precise analysis of where settlement should fall is not a matter which may best be resolved by outside experts. In this case, because of the involvement of government counsel and private counsel experienced in practice before the court, the court has considerable trust in the normal process, whereby negotiation and assessment of litigation risks has led to an outcome acceptable to all parties.

The court also believes that litigation of the technical issue of structure of fees based on factors set forth in 19 U.S.C.

---

1. If the court's jurisdictional rulings are in error, only those few parties which filed individual yearly protests could recover any amounts. There was little incentive to pursue any fee overcharging on an individual basis. The amounts to be recovered were likely not worth the effort of individual protests and suits. Only this class action provided the vehicle for widespread refund of fees.

§ 1555 would be time-consuming and expensive and there is no guarantee continued litigation would yield full recovery by plaintiffs.

In sum, there has been complete notice and opportunity to be heard and no substantial reason for not settling for the $2.1 million figure has emerged. Counsel for plaintiffs have the expertise necessary to assess the merits of the settlement and exercised appropriate judgment in attempting to resolve this matter promptly at a pre-trial stage. The governmental defendant has fully reviewed and approved the settlement. The court believes a recovery of two-thirds of the principal amount in litigation is a fair settlement for both sides in this case and notes that such a settlement reflects the very real litigation risks to all concerned.

## II. Attorneys' Fees

■ Generally attorneys' fees are calculated using the "lodestar" approach established in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.1973) and *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir.1976). The first step in this process is to determine the "lodestar" amount. This is the number of hours reasonably expended on a case multiplied by a reasonable hourly rate of compensation for each attorney involved. The second step is to adjust the lodestar amount either up or down based on a variety of factors, including the contingent nature of the case and the quality of the work performed. *See County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1477, 1479 (E.D.N.Y. 1989) (citing precedent for the "lodestar" method).

### A. The Baseline Lodestar Amount

In this case, review of the record indicates that ST & R spent 2,054.30 hours working on this matter.[2] At the hourly rates which were in effect at the time the services were rendered, the total attorneys' fees amount to $306,944.

■ The court finds that ST & R's representation of the amount of time required to prepare for this case was not excessive. IBWC's argument that ST & R inefficiently billed partners' time must be discounted. As ST & R notes, Mr. Gerdes was the only attorney in the firm's Washington office at the time the work was performed and as a result it was not always possible for him to delegate legal matters to a subordinate with a lower billing rate. Furthermore, the court sees nothing peculiar in permitting a partner to engage in research and bill the time accordingly. *See Muehler v. Land O'Lakes, Inc.*, 617 F.Supp. 1370, 1379 (D.Minn.1985). One would assume an experienced partner's research would be more efficient and productive. Likewise, it is to be expected that a partner will review an associate's work product and conduct inter-office conferences concerning the status of the case.

■ The court is also not inclined to dissect the amounts attributed to paralegal services. The fees charged and the time spent by ST & R for the basic administrative chores do not seem to be excessive or wasteful.

■ The time spent in defending the motion to disqualify plaintiffs' counsel is allowed. The court previously ruled that disqualification of the firm would severely disadvantage the class. Indeed, after plaintiffs' counsel prevailed on the motion, earnest settlement negotiations ensued.

■ Hours for work prior to filing of the complaint are allowed because they are directly related to case preparation. No award is made for "lobbying efforts" which resulted in a favorable amendment of the statute for future years.

■ The hourly rates charged by ST & R are also reasonable. Basically, the requested rates must be in line with those prevailing in the community for similar ser-

---

**2.** Originally ST & R claimed that they expended 2,058 hours, offering the entries in their Billing Memorandum as proof of these hours. Upon learning that two of the entries were duplicative, ST & R modified the number of hours spent by subtracting 3.7 hours from the total.

vices by lawyers of reasonably comparable skill, experience, and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1983). In this case the appropriate "legal community" is composed of customs law practitioners throughout the United States. ST & R has provided an affidavit which sets forth the hourly rates in effect for other customs law firms. When viewed in this light, the rates charged and claimed by ST & R fall well within the acceptable range of rates prevailing in the appropriate legal community. The rates are also comparable to the hourly fees charged by members of the bar located in the same geographical area as plaintiffs' counsel.

Rates are allowed as of the time the services were performed. Services were rendered within the last few years. In this period of single-digit inflation and interest rates, the court sees no need to elevate the rates to current levels. Use of rates applicable to the time when services were rendered is more precise.

In conclusion, the court determines that the lodestar amount in this case is $306,944.

### B. Discretionary Adjustment of the Lodestar Amount

■ ST & R urges the court to enhance the lodestar amount and award attorneys' fees in the amount of $700,000. Although the court agrees that application of a multiplier is justified due to the contingent nature of the case and the excellent quality of representation, a multiplier in excess of two is rejected.

Courts often permit enhancement of the lodestar amount in common fund situations for several reasons, including "the risk of litigation, the complexity of the issues, and the skill of the attorneys." *In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1296, 1310 (E.D.N.Y.1985) (*quoting New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1140 (2d Cir.1983)) *aff'd in part and rev'd in part*, 818 F.2d 226 (2d Cir.), *cert. denied, sub nom. Schwartz v. Dean*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987). Cases dealing with fee-shifting statutes that disapprove use of a multiplier are inapplicable. Although the attorneys in this case were undoubtedly skillful and the issues, as in many customs cases, complex, the court determines that the primary reason for justifying an enhancement in this case relates to the risk involved. Typically courts are willing to permit enhancement of the lodestar amount to account for the risk involved in contingency cases. *See Rothfarb v. Hambrecht, et al.*, 649 F.Supp. 183 (N.D. Calif.1986) (multiplier of 2.0 permitted for a contingency); *In Re Cincinnati Gas & Electric Company Securities Litigation*, 643 F.Supp. 148 (S.D.Ohio 1986) (2.48 multiplier permitted for contingency, delay and early settlement).

■ Although this case was one of first impression, was complex, and was handled well, it is not so extraordinary as to warrant more than double the baseline lodestar amount. The court determines that a multiplier of two is sufficient in this case to compensate for risk, thus increasing the award of attorneys' fees to $613,888.[3] A limitation to simply hourly rates would chill litigation which may very well be in the interest of justice.

■ The court denies IBWC's request for discovery and separate evidentiary hearing on attorneys' fees. No efforts were made to pursue this matter until the settlement approval hearing. Fees were one of a number of issues that were to be the subject of the December 4, 1990 settlement hearing; preparation on the issue should have occurred prior to that time. Several months for study of this matter and for formal or informal discovery elapsed prior to the hearing. In any case, almost every factual issue raised by IBWC has been fully explained by affidavit. Fur-

---

**3.** The court notes that although the lodestar approach has been chosen, an attorneys' fees award of $613,888 is fair to the class under the percentage approach to determining attorneys' fees as well. An award of $613,888 is less than thirty percent of the proposed settlement, less than what many members of the class were willing to pay at the outset.

ther testimony from officers of the court on these matters would appear redundant.

### III. Expenses

■■■ Given that this was a "common fund" class action, ST & R may be reimbursed for out-of-pocket expenses, as long as the disbursements are reasonable in amount and reasonably related to the interests of the class. *See County of Suffolk, supra* at 1480; *Cincinnati Gas, supra* at 153. The expenses enumerated by ST & R are always billed separately and, as such, are recoverable. The court determines that ST & R may be reimbursed for their expenses in the amount of $8,513.53.

The court also notes that it is to be expected that there will be costs in administering the settlement. ST & R estimates that the settlement costs will total $77,410. Plaintiffs should adjust distribution for such costs and shall seek approval for payment after any costs are incurred.

### Conclusion

For the reasons given above, the court concludes that the settlement should be approved and that ST & R may recover attorneys' fees in the amount of $613,888 and expenses in the amount of $8,513.53 for their work in the above-noted class action. See judgment attached.

### FINAL JUDGMENT

THIS ACTION came on for hearing before the Court, on December 4, 1990, the Honorable Jane A. Restani, presiding, and the issues having been duly heard and a decision having been duly rendered,

WHEREAS, the plaintiff, The National Bonded Warehouse Association, Inc., et al., commenced this action upon the belief that a portion of the annual fees actually charged and collected by the United States Customs from Bonded Warehouses during the years 1985, 1986, and 1987 were in excess of the amount which could be properly collected under the applicable statutes and regulations, the Court having certified this litigation as a class action, the government having vigorously defended this action on both substantive and procedural grounds, and continues to maintain that the fees in question were properly collected, the parties having agreed to the settlement of this litigation on the material terms set forth in this Final Judgment, and without adjudication of any issue of law or fact, and without defendant agreeing to such allegations or admitting liability for any of the offenses charged in the complaint,

IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1. This Court has jurisdiction over the parties and the subject matter of the complaint. The conditional nature of the class certification is removed.

2. The plaintiffs, The National Bonded Warehouse Association, Inc., et al., shall recover of the defendant, The United States, et al., the sum of 2.1 million dollars, representing full payment of all claims for bonded warehouse user fees for the years 1985, 1986, and/or 1987, including attorney's fees and expenses.

3. The payment of the sum of 2.1 million dollars to the plaintiffs by the defendants, shall be made no later than sixty days after the entry of this Final Judgment, said payment to be made to:

Settlement Administrator:
Sandler, Travis & Rosenberg, P.A.
5200 Blue Lagoon Drive
Suite 600
Miami, Florida 33126

and shall be deposited forthwith by the Settlement Administrator, into a trust or escrow account earning interest. Plaintiffs shall submit a proposed order on specific procedures, as discussed with the parties, within thirty days hereof.

4. Sandler, Travis & Rosenberg, P.A., as counsel for plaintiffs and the class, is hereby awarded the sum of $613,888 as its attorneys' fees, plus $8,513.53 in expenses. After payment of the $2.1 million dollars to the Settlement Administrator, these attorneys' fees shall be deducted from the $2.1 million dollar settlement fund and disbursed from and paid out of the settlement fund immediately. These amounts do not include future fees and expenses for administration of the settlement.

After deduction of plaintiffs' counsel's attorney's fees, the remainder of the fund is to be divided into three equal portions by the Settlement Administrator for each of the three years at issue, 1985, 1986 and 1987. Each yearly pool of funds is to be divided pro-rata on a percentage basis of the fees actually paid by those claimants who have timely submitted valid proofs of claim for fees in that yearly period.

6. Commencing on September 17, 1990, the Settlement Administrator sent proof of claim forms to all Customs Bonded Warehouses that were identified by the Government as having paid user fees for the years 1985, 1986 and 1987. All Customs Bonded Warehouses wishing to participate in the distribution of the judgment were notified to submit a signed proof of claim form together with the requested documentation, by certified or registered mail, return receipt requested, postage pre-paid, postmarked no later than December 20, 1990, to the Settlement Administrator.

7. The Settlement Administrator shall undertake whatever investigation is necessary or reasonable to verify the accuracy or completeness of submitted proofs of claim, including the request for the filing of additional proof. In the event that such additional proof is not submitted, or if for any reason a claim is rejected, the claimant shall have twenty days following mailing of rejection of the claim by certified or registered mail, return receipt requested, to file a written request for a hearing with the Court. A copy of such request for hearing shall also be mailed to the Settlement Administrator.

8. Counsel for the plaintiffs shall submit to the Court no later than February 10, 1991, a report on the proposed distribution of the fund together with a petition for reimbursement for fees and expenses incurred in the administration of the settlement for which counsel has not been otherwise compensated. Final distribution of fund proceeds is subject to the approval by this Court.

9. Checks issued by the Settlement Administrator in payment of valid claims, shall become void unless cashed or deposited within 120 days of issuance.

10. Upon entry of this final judgment, the defendants, and their present and former officers and employees, are hereby dismissed and released from any and all of the settled claims, whether known or unknown, which have or might have been asserted against them by plaintiffs, the class and any class member, regardless of whether any such plaintiffs or class member files a proof of claim form. Such dismissal will bar the plaintiffs and all class members, either directly, representatively or in any other capacity, from instituting or prosecuting any other action asserting any of these settled claims.

11. By entry of this final judgment, the Court has not finally determined the merits of any claims made by the plaintiffs against, or the defenses of, the defendants. This Final Judgment does not imply that there has been or would be any finding of any violation of law by any defendants, or that recovery in any amount could be had if the litigation were to have continued.

12. The Court shall maintain continuing jurisdiction over this matter to issue such further orders as may be appropriate, or any issue relevant to this settlement including any issues as to unclaimed or undistributed funds.