**D & M WATCH CORP., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Court No. 83-12-01775.**

United States Court of International Trade.

June 26, 1992.

---

Irving A. Mandel, Steven R. Sosnov and Jeffrey H. Pfeffer, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, James A. Curley, Atty., Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, New York City, Edward N. Maurer, Office of Asst. Chief Counsel, U.S. Customs Service, New York City, of counsel, for defendant.

## MEMORANDUM AND ORDER

AQUILINO, Judge:

Final judgment entered in the above-numbered case on May 7, 1990 and in 104 other, similar cases between April 1990 and December 1991 on behalf of various named plaintiff importers, including D & M Watch Corp., docketed in this Court of International Trade as 83–01–00040–S, 83–04–00548, 83–05–00723, 83–07–00957, 83–07–00986, 83–07–00988–S, 83–07–01058, 83–08–01243, 83–08–01246, 83–09–01287–S, 83–09–01289, 84–01–00008, 84–01–00128, 84–03–00424, 84–03–00428, 84–04–00473, 84–06–00848, 84–07–00957, 84–07–00972, 84–07–00982, 84–07–00986, 84–07–00988, 84–08–01117, 84–09–01323, 84–11–01567, 84–11–01568, 84–12–01794, 85–01–00058, 85–02–00162, 85–02–00165, 85–02–00227, 85–03–00368, 85–03–00443, 85–04–00501, 85–04–00573, 85–05–00729, 85–07–00996, 85–08–01012, 85–08–01013, 85–08–01071, 85–08–01073, 85–08–01117, 85–08–01118, 85–08–01119, 85–09–01156, 85–10–01523, 85–10–01527, 86–04–00440, 86–04–00441, 86–05–00595, 86–05–00596, 86–06–00768, 86–06–00771, 86–06–00793, 86–07–00846, 86–07–00847, 86–07–00849, 86–07–00945, 86–09–01128, 86–09–01209, 86–11–01399, 86–11–01489, 86–12–01505, 86–12–01506, 86–12–01532, 86–12–01593, 87–01–00030, 87–01–00052, 87–01–00078, 87–01–00090, 87–01–00108, 87–02–00180, 87–03–00482, 87–03–00515, 87–03–00516, 87–03–00521, 87–03–00538, 87–03–00539, 87–08–00862, 87–08–00863, 87–08–00864, 87–08–00865, 87–08–00871, 87–09–00920, 87–09–00922, 87–09–00967, 87–09–00968, 87–09–00972, 87–10–01002, 87–10–01003, 87–10–01015, 87–10–01042, 87–11–01072, 87–12–01151, 87–12–01153, 88–02–00115, 88–02–00146, 88–04–00267, 88–04–00306, 88–04–00313, 88–05–00371, 88–07–00529, 88–07–00531 and 88–07–00532. Each of the judgments had been submitted to the court upon an agreed statement of facts and provided for reliquidation of certain entries listed therein.

After the Customs Service had refused or failed to reliquidate all such entries, the plaintiffs interposed a motion for citation of contempt of court and other relief against the defendant. A hearing in con-

formity with CIT Rule 63 was held, and the court thereafter granted in part that motion per slip op. 92–58, 16 CIT ——, 795 F.Supp. 1160 (April. 24, 1992), familiarity with which is presumed. Among other points, the court concluded that the defendant was indeed in contempt, whereupon the Chief of the New York Customs Region's Residual Liquidation and Protest Branch and the defendant and its other officers, employees, agents, servants, sureties and assigns were ordered to reliquidate within 30 days

> each and every entry listed on the final judgments entered in the 105 actions enumerated above and not previously reliquidated or annotated by the parties as "not stipulable" and which would result in lower duties, with any resulting duty differentials to be paid to the plaintiffs, together with interest thereon as provided by law

and then to serve and file a written report of compliance. *Id.* at 28–29, 795 F.Supp. at ——.

### I

On May 26, 1992, the defendant filed such a report, followed by a supplement on June 5th. They state, among other things:

1. ... In accordance with the court's order of April 24, 1992, the New York Region posted bulletin notices of liquidation affecting 610 of the entries in these 105 stipulated judgments.... There were 410 entries reliquidated with refunds....

2. The refunds of customs duties on the 410 entries total $827,558.25. Interest provided by law amounts to $819,742.05, for total refunds of $1,647,300.30. The refund checks for 405 of these entries are scheduled to be mailed on or about June 1, 1992. The remaining 5 entries of the 410 with refunds required correction after the reliquidation instructions were put into the Service's computer system ("ACS"). The refund checks for these five entries, including interest, of approximately $19,000, are scheduled to be mailed on or about June 8, 1992.

\* \* \* \* \* \*

5. Two entries out of the 410 ... were lost by Customs after the Court returned the entries with their corresponding judgments to the Customs Service. Bulletin notices of liquidation for these entries indicate that the importers paid duties in connection with the entries. The first of these entries was made by D & M Watch Corp. and involved duties of $3,362.12. We have calculated the average refund being provided on other D & M entries among the 61[0] now being acted on. The average refund is 78.14% of the duties paid. Accordingly, the Customs Service has reliquidated Entry No. 82–374135–5 with refund of duties of $2,627.16, that is 78.14% of the paid duties.

6. The second lost entry was one made by Americana Creations and involved duties of $4,895.58. We have calculated the average refund being provided on other Americana Creations entries among the 61[0] now being acted on. The average refund is 48.90% of the duties paid. Accordingly, the Customs Service has reliquidated Entry No. 82–374283–3 with a refund of duties of $2,393.94, that is 48.90% of the paid duties.

\* \* \* \* \* \*

8. There are various circumstances which resulted in there not being any refund to provide in [the 200 other] entries....

\* \* \* \* \* \*

20. ... For entries processed ... in any one calendar week, the refund checks are issued after the Friday two weeks after the end of the processing week. Thus refunds for the entries processed for reliquidation the week of May 11–15, 1992 were mailed approximately June 1, 1992.

21. The interest due on the refunds on two entries in Court No. 86–07–00849, and in 17 entries in Court No. 83–07–00957 was incorrectly computed upon reliquidation. My office has made the necessary corrections. The checks for the additional amounts of interest are sched-

uled to be issued on or about June 22, 1992.

The defendant requested further instructions regarding six entries allegedly involving "exceptional circumstances".

### A

A hearing was held on defendant's report(s) on June 16, 1992, at which time the plaintiffs abandoned any claim regarding two of the remaining entries in question. *See* Tr. at 7–8. As for the other four, the parties agreed to make refunds on the prorata basis described in paragraphs 5 and 6, *supra. See id.* at 14–15. And they have now submitted a proposed order to effectuate this understanding.

Otherwise, nothing has been brought to the attention of the court tending to indicate that the defendant has not in fact purged itself of contempt or that it has not taken steps which will complete purgation imminently.

### B

■ However, as the 30-day period for compliance was nearing its end, the defendant filed a Motion Under Rule 60(b) for Relief From the Stipulated Judgments and to Restore the Cases to the Calendar, accompanied by a Motion to Stay Enforcement of t[he] Court's Order of April 24, 1992 and a proposed order to show cause. A stay was sought until 20 days after decision of the former motion upon a representation, *inter alia,* that "the Government has made a prima facie case for relief under Rule 60(b), and therefore is likely to prevail" on the following arguments:

A. The Government would not have agreed to the Stipulated Judgments, and could have taken steps to protect its interest, if the plaintiffs had not delayed for 19 months and until the court had entered all the judgments, before bringing its charge of contempt. The Government, therefore, should be relieved of

these judgments and the cases restored to the calendar.

and

B. The Stipulated Judgments should be vacated under Rule 60(b)(1) or (6) because the Government made a mistake in interpreting the judgment when it agreed to the stipulation.

At first blush, the court could not conclude that an order to show cause was warranted, particularly in the light of the sections of the rule relied on by the defendant, to wit:

On motion of a party or upon its own initiative and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6)' any' other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.[1]

Nevertheless, at the hearing on June 16th, the defendant indicated a desire to continue to press its motion, seemingly oblivious to (or disbelieving of) the precise lie of these cases. Indeed, following receipt of predictable papers in opposition from the plaintiffs and also the hearing, the defendant has submitted a reply brief, stating in substantial part:

The defendant is not barred by the law of the case, *res judicata* or any other doctrine that precludes an issue from being heard by the Court....

The defendant's right to relief under Rule 60(b) to have the stipulated judg-

---

**1.** *See* Defendant's Brief in Support of its Motion Under Rule 60(b) for Relief From the Stipulated Judgments and to Have the Cases Restored to the Calendar, p. 6.

ments vacated is a different claim from their assertion of laches that would have barred the charge of contempt. Moreover, the circumstances here are extraordinary because we have 105 judgments. The plaintiffs[ ] directly benefited from their delay by waiting until all judgments had been entered by the Court. If the plaintiffs had acted in a timely manner, the defendant would not have entered into all of the stipulated judgments. The delay thus caused the defendant extreme hardship from which the plaintiffs have benefited.

The defendant's Rule 60(b) motion is not moot. Although the stipulated judgments have been satisfied, there is no reason why the plaintiffs should not be required to return the payments if the Court grants the motion. It would be a great injustice to the defendant if the Court were to find that the motion has become moot because the defendant did what the Court ordered it to do, especially since the Court took no action to stay enforcement of the judgments when requested....

\*    \*    \*    \*    \*    \*

The defendant's request for relief from the judgments is not barred by bad faith as the plaintiffs argue. There can be no doubt that Mr. Ryan acted on advice of counsel when he interpreted the judgments as he did. If he acted wrongly, as the Court found, then the defendant was mistaken in its interpretation of the judgments. There is no legal principle we know of that would bar the defendant from relief under Rule 60(b) for a misinterpretation of the judgments....

If these are defendant's perceptions at this time, they do not conjure a basis for the relief requested. The record clearly shows, and the court found in 795 F.Supp. at page 1164 that "the defendant dictated, if not composed, the ultimate terms of the submissions at issue." Some 62 of them were filed with the court during the period

March 1990 to April 1991, with the remainder entered thereafter.[2] As stated above, the defendant cites reasons (1), (2) or (3) of Rule 60(b), but the rule on its face precludes relief requested therefor more than one year after entry of judgment. Hence, defendant's motion is time-barred in most of the cases.

On the other hand, the motion is not out of time in the remainder of the cases. Moreover, the defendant also presses for relief pursuant to subparagraph (6) of the rule, which is not bound to the period of limitation. However, that provision confers, as the defendant recognizes, "broad discretion"[3] on the court which may be exercised whenever "appropriate to accomplish justice", to quote from *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). The defendant also cites *Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950), to the effect that Rule 60(b)(6) is properly invoked where there are "extraordinary circumstances". Clearly, they exist in these cases, but just as clearly they are largely the fault of the government itself. No exercise of discretion, based on the extraordinary record at bar, could possibly accomplish justice by shifting responsibility from the defendant to the plaintiffs and/or the proceedings it has fomented.

In 795 F.Supp. at page 1171, the court referred to "the day when 'final' will actually be what the judicial process intends." The defendant now takes the position that its reliquidation of the entries at issue in these cases has not made its motion for relief therefrom moot, but one of the reasons advanced just a few weeks ago in support of a stay was:

... [I]f the entries are reliquidated at this time, and the duties refunded with interest, then the stipulated judgments will be satisfied. It is then arguable that the issue raised by the motion under Rule 60(b), *i.e.*, whether the Government should be relieved of the stipulated judg-

---

**2.** Compare the schedule of the cases attached to the defendant's moving papers.

**3.** Defendant's Brief, p. 6.

ments, is moot since the judgments will have been satisfied.[4]

Furthermore, the defendant attempts to rely on the rule adopted by Congress in the Tariff Act of 1930, 19 U.S.C. § 1514(a), that reliquidation of an entry "shall be final and conclusive upon all persons (including the United States and any officer thereof)", albeit against the plaintiffs.[5] But the goal of their cases from the beginning has been reliquidation, not denial thereof, followed by further administrative entanglement of the importers with Customs over issues long settled against the Service by the courts.

In hereby denying defendant's motion pursuant to CIT Rule 60(b), which has raised phenomena called mistake, surprise, neglect, fraud, misrepresentation, and other misconduct of an adverse party, the court is constrained to recite again for the defendant the definition of contempt set forth in 795 F.Supp. at page 1168, namely:

> Any act which is calculated to embarrass, hinder, or obstruct court in administration of justice, or which is calculated to lessen its authority or its dignity. Committed by a person who does any act in willful contravention of its authority or dignity, or tending to impede or frustrate the administration of justice, or by one who, being under the court's authority as a party to a proceeding therein, willfully disobeys its lawful orders or fails to comply with an undertaking which he has given.

## II

Such phenomena in these cases caused the court in slip op. 92–58 to grant plaintiffs' motion for award of costs and attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Specifically, the court held that the clear and convincing evidence on the record of defendant's breach of faith with the judicial process was the equivalent of bad faith within the meaning of the act, thereby entitling the plaintiffs to awards under section 2412(b).

Consistent with defendant's suggestion at the time that any amounts be determined later, the plaintiffs have now filed an application therefor, and both sides had an opportunity to be heard in open court on June 16, 1992. The practice comment to CIT Rule 68, which covers attorneys' fees and expenses, states that an application shall be substantially à la Form 15. Plaintiffs' application is essentially in that format and requests $77,625 as fees for their attorneys and $11,553.36 as other fees and expenses for a total award of $89,178.36.

## A

The request for attorneys' fees is broken down as follows:

| Name | Hours | Rate | Amount |
| --- | --- | --- | --- |
| Mandel | 16.50 | $ 300 | $ 4,950.00 |
| Sosnov | 81.75 | $ 300 | $ 24,525.00 |
| Pfeffer | 160.50 | $ 300 | $ 48,150.00 |

Irving A. Mandel has appeared in these cases from the beginning as plaintiffs' lead counsel. In addition, he was called as a witness in support of the motion for citation of contempt. His testimony on April 7, 1992 plus his affidavit submitted now in support of plaintiffs' application show that he has some 25 years of broad-based experience in the practice of customs law, including employment for a time by the Customs Section of the Justice Department's

---

**4.** Defendant's Motion to Stay Enforcement of t[he] Court's Order of April 24, 1992, pp. 2–3.

**5.** *See* Defendant's Opposition to [Plaintiffs'] Motion to Amend or Clarify the Order of April 24, 1992, p. 4.

Civil Division and also by a judge of this Court of International Trade as a law clerk.

In his affidavit, Mr. Mandel states that his present practice is to bill his clients at $300 per hour, which he characterizes as "a median rate of compensation among competitive law firms specializing in customs and trade law." Appended to the affidavit is a copy of one submitted by an equally-experienced member of the CIT Bar in *National Bonded Warehouse Ass'n, Inc. v. United States*, CIT No. 87–02–00270, and aimed at assisting the court in awarding fees to the plaintiffs' Miami law firm in that case. The affidavit contains a schedule showing fees for the partners of $225 per hour as of December 1990. Ten other, senior members of the CIT Bar from around the country were called upon to comment on that rate. No one opined that it was unreasonable. At least one did respond that the rate was at or below prevailing rates in New York.

■ All of these cases arose out of the New York Customs Region. Mr. Mandel's papers boldly proclaim the existence of his law office at 40 Exchange Place, New York, New York. Hence, the court concludes that rates prevailing in this city's marketplace constitute the appropriate benchmark for reasonableness. The Lawyers Almanac 1991, at 169–70 (Prentice Hall 1991) contains a schedule of billing rates of select law firms in New York City, at least one of which has appeared in the Court of International Trade. The hourly rates for partners in that firm are listed as from $245 to $350. Volume 14, no. 11 of The National Law Journal (Nov. 18, 1991)

contained a supplement on law-firm billing, setting forth a "Sampler on Rates Around the Country", including New York City. The partner rates reported (at p. S4) for one of the surveyed firms which also practices before this court are $275–450.

In the light of such information, particularly when viewed against the nature of these extraordinary proceedings, the court concludes that the requested rate of $300 per hour for Mr. Mandel is not unreasonable [6] and should be awarded for the time properly chargeable to them.

■ As shown above, the plaintiffs request an award of fees for 16.5 hours of Mr. Mandel's time, which is broken down in a schedule attached to his affidavit and subdivided as "Pre–Hearing Time", "Motion to Amend or Clarify", "Defendant's Rule 60(b) Motion" and "Defendant's Compliance".[7] Each category is properly chargeable. The court has perused each entry thereunder and finds each compensable, except for two—one on February 8, 1992 and the other on February 17th. Both attribute 3½ hours for travel, from Miami to New York City on February 8th and then for return on the later date. While it does appear that this roundtrip was caused by the refusal of Customs to reliquidate, and the record also indicates a Florida residence for Mr. Mandel, for purposes of these New York proceedings he is a New York lawyer with a New York City law office. Ergo, those seven hours of travel time must be disallowed; the plaintiffs are thus entitled to an award for 9.5 hours of Mr. Mandel's time or $2,850.

**6.** By way of comparison, the court notes that in *National Bonded Warehouse Ass'n, Inc. v. United States*, 14 CIT ——, 754 F.Supp. 874 (1990), the plaintiffs' Miami counsel were awarded an amount equalling some $299 on an hourly basis, although that was a successful class action entailing lodestar consideration.

**7.** The schedule appears to be a recapitulation of counsel's daily, apposite activities, whereupon the plaintiffs were called upon at the hearing on June 16, 1992 to produce for the court's consideration original time records. The plaintiffs have now filed a document styled Supplement to Application for Fees and Costs, Etc., wherein Mr. Pfeffer attests that

handwritten time records were prepared contemporaneously as work was performed [by him and Messrs. Mandel and Ronay] and used as drafts for the computerized records submitted to the Court. After these time records were entered into the word processor ..., the handwritten drafts and the computerized originals were given to me for review. Upon completion of my review I personally destroyed the handwritten drafts, as is the ordinary billing practice in Mr. Mandel's office. *See id.*, Affidavit of Valerie Baker (June 17, 1992).

Steven R. Sosnov, on the other hand, maintains his law office outside New York City—in Norristown, Pennsylvania. He has submitted an affidavit which indicates that his experience as a lawyer is the equal of Mr. Mandel's. In fact, Mr. Sosnov was the successful trial counsel in the underlying test case *Belfont Sales Corp. v. United States,* 11 CIT 541, 666 F.Supp. 1568 (1987), *reh'g denied,* 12 CIT 916, 698 F.Supp. 916 (1988), *aff'd,* 878 F.2d 1413 (Fed.Cir.1989), and he has been able hearing attorney for the plaintiffs now in these proceedings. They request $300 per hour on behalf of Mr. Sosnov, which the court concludes is not unreasonable under the circumstances already discussed above.

Also attached to Mr. Sosnov's affidavit is a schedule of activities and time expended on them, subdivided as "All other matters related to bringing Petition to Court, Compliance, and Fees", "Rule 60b Motion and Motion for Stay of Proceedings" and "Motion to Amend or Cla[ri]fy". Each category is properly chargeable to these proceedings. While each also appears to be a recapitulation of contemporaneous entries, after the hearing on June 16th Mr. Sosnov submitted what appears to be his original Client/Case Service Record, filled in by hand. The court has reviewed and compared those entries with the printed schedule attached to the supporting affidavit and finds the information in order and supportive of an award to the plaintiffs for 81.75 hours of Mr. Sosnov's time or $24,525.

■ Jeffrey H. Pfeffer has provided two affidavits in support of plaintiffs' application for an award of attorneys' fees on his behalf. They indicate that he has been admitted to the practice of law and associated with Mr. Mandel since 1986. As shown above, the plaintiffs request $300 per hour of Mr. Pfeffer's time in these proceedings upon representations that that has been his billing rate since January 1, 1992.

The record reflects, and the court has observed, Mr. Pfeffer's integral role in these proceedings, but it does not reflect standing or experience the equal of Mr. Mandel's or of Mr. Sosnov's. While that status may well be achieved some day, it would be unreasonable for the court to hold that it has been reached herein. Of course, this is not to hold that any award to the plaintiffs on Mr. Pfeffer's behalf would be unreasonable, only that $300 an hour is out of the question. On its part, the defendant argues that "plaintiffs [*sic*] own proofs ... show Mr. Pfeffer's hourly rate should not exceed $145.00." [8] This is at least true for an "intermediate-level associate" in the Miami law firm in December 1990. But that same firm apparently was billing as much as $195 per hour for work done by associates.[9] As for the two law firms located in New York City, where Mr. Pfeffer practices, and to which the court looked via references in The Lawyers Almanac and The National Law Journal, the former reveals rates for associates of from $105 to $240, while the latter reportedly billed time for such younger attorneys from a low of $105 to a high of $270 an hour. If these figures accurately reflect the determinative marketplace, and the court has no reason to doubt that they do, they show an approximate $15 per-year-of-experience increment, based on a denominator of ten. Multiplying Mr. Pfeffer's years at the Bar by this increment and adding it to the foregoing beginning number lead the court to conclude that $195 is not an unreasonable hourly rate for him under the circumstances at hand.

As explained, *supra* note 7, the time records presently in existence for Mr. Mandel and his employees bear the imprint of the ubiquitous computer word processor. It has produced sheets for Mr. Pfeffer subdivided "Pre–Hearing and Hearing Time", "Defendant's Rule 60(b) Motion and Motion to Stay", "Defendant's Report of Compliance" and "Application for Attorney's Fees". Each category is properly charge-

---

**8.** Defendant's Supplemental Opposition to Plaintiff's Application for Attorneys Fees and Expenses, p. 2.

**9.** *See* Plaintiffs' Application for Fees and Other Expenses Pursuant to the Order of Court in Slip Op. 92–58 and USCIT Rule 68, exhibit 5–A, tenth page.

able. The court has perused each entry thereunder and finds each compensable. Each accounts acceptably for time spent on or in these extraordinary proceedings. However, contrary to plaintiffs' total count of 160.5 hours, the court finds that the entries add up to 165.0. The plaintiffs are entitled to an award for that much time, at the rate of $195, for a total of $32,175.

To summarize then the foregoing discussion, the plaintiffs are hereby awarded $59,550 as reasonable fees on behalf of their attorneys.

### B

Plaintiff's application breaks down the $11,553.36 claimed as other fees and expenses as follows:

| | |
|---|---|
| Stephen J. Ronay | $11,062.50 |
| Cost of Transcript | $ 410.80 |
| Federal Express | $ 22.00 |
| Federal Express | $ 15.56 |
| Per Diem Witness—Lawrence Ryan | $ 42.50 |

On their face, the transcript of the hearing on plaintiffs' motion for citation of contempt and the fee they tendered adverse government witness Ryan are taxable costs within the meaning of 28 U.S.C. § 1920 which are thus hereby awarded pursuant to EAJA, 28 U.S.C. § 2412(a).

As for the Federal Express listings, plaintiffs' voluminous supporting papers are nevertheless devoid of any explanation thereof. Their request for reimbursement must therefore be denied.

■ The sum requested as an expense on behalf of Mr. Ronay was arrived at by multiplying $150 times 73.75 hours. Plaintiffs' application contains a schedule of activities and time expended on them, subdivided as "Defendant's Compliance", "Defendant's Rule 60(b) Motion" and "Pre–Hearing and Hearing Time". Each category is properly chargeable to these proceedings. The court has perused each entry thereunder and finds that each accounts acceptably for time spent on or in these extraordinary proceedings. Moreover, they total the number of hours claimed.

The record shows that, although Mr. Ronay is not a lawyer, his experience in matters involving Customs, commencing more than 25 years ago as an employee of the Service, is the equal of that of Messrs. Mandel and Sosnov. Indeed, attached to defendant's supplemental papers in opposition is a 4½–page single-spaced Customs Position Description for a "Paralegal Specialist" of Mr. Ronay's seniority. In short, there is no doubt about the nature or actuality of Mr. Ronay's involvement in these proceedings, nor is there any doubt that Mr. Ronay is and has been an employee of Mr. Mandel, thereby making plaintiffs' application as to him one for reimbursement.

This distinction is critical to any recovery. In slip op. 92–58, the court admonished the plaintiffs that award of reasonable attorneys' expenses under EAJA would be held strictly to the dictates of the rules, citing, among other cases, *Bonanza Trucking Corp. v. United States*, 11 CIT 436, 664 F.Supp. 1453, and 11 CIT 489, 669 F.Supp. 430 (1987). The plaintiffs should have considered the following discussion by the court concerning reimbursement of paralegal time in cases like these. To quote at length:

Th[at] question ... has been dealt with by other courts in at least three different ways. At one extreme, some courts have strictly construed attorney-fee provisions to allow only lawyers to be compensated. *See, e.g., CTS Corporation v. Electro Materials Corp. of America*, 476 F.Supp. 144, 145 (S.D.N.Y.1979); *Grendel's Den, Inc. v. Larkin*, 582 F.Supp. 1220, 1229 (D.Mass.), *modified on other grounds*, 749 F.2d 945 (1st Cir.1984). On the other side, some courts have permitted such fees at the rates at which the

clients were billed. See, e.g., Louis v. Nelson, 646 F.Supp. 1300, 1320–21 (S.D.Fla.1986); Burt v. Heckler, 593 F.Supp. 1125, 1133 (D.N.J.1984); Hoopa Valley Tribe v. Watt, 569 F.Supp. 943, 947 (N.D.Cal.1983). Finally, some courts award amounts commensurate with the law-firm rate of pay to the law clerk. See, e.g., American Academy of Pediatrics v. Heckler, 580 F.Supp. 436, 440 (D.D.C.1984), modified on other grounds, 594 F.Supp. 69; Ashton v. Pierce, 580 F.Supp. 440, 443 (D.D.C. 1984).

This third approach seems most in line with the congressional intent that the

> ceiling on attorney fees relates only to compensation of lawyers or agents (e.g., accountants themselves). It does not include their overhead expenses or other costs connected with their representation of a particular interest in a proceeding. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980).

The court in Ashton concluded, for example, that "[t]o award 'fees' for law clerk and paralegal time at hourly charges billed to clients would, in effect, be to compensate those firms both for overhead and profit". 580 F.Supp. at 443. It found "that the appropriate means of compensation for law clerk and paralegal time is to treat this class of personnel as an expense covering 'study' and 'analysis' ". Id. While Congress may not have precisely contemplated law-clerk research in defining "fees and other expenses" in EAJA, the chosen definition is broad enough to cover such work.

In deciding to take the third approach in the interests of economy and of fairness, this court cannot determine from plaintiff's application what the rate of compensation to [the] law-clerk ... was....

11 CIT at 444–45, 664 F.Supp. at 1459–60. In the end, the plaintiff Bonanza Trucking

Corp. was awarded $11.11 per hour based on acceptable proof of payment of that rate in lieu of an original prayer for $75 an hour. Compare id. with 11 CIT at 490, 669 F.Supp. at 431.

In his original affidavit in the cases at bar, sworn to June 12, 1992, Mr. Ronay states (at para. 3):

> ... My fee for these services would be $11,062.50 at the $150.00 per hour rate I customarily receive.

In his supplemental affidavit, submitted after the hearing on June 16, 1992 at which the defendant objected to award of the foregoing, requested amount, the affiant answers:

> I have personal knowledge that my hourly rate which is billed to clients of Irving Mandel is $300 per hour for matters received after January 1, 1992. I also have personal knowledge that clients billed at the $300.00 hourly rate have paid this amount to Mr. Mandel.

This may be, but, as the defendant now responds, "there is nothing to support that claim other than the affidavits." [10] And the court concludes that they are not sufficient to justify an award on behalf of Mr. Ronay, notwithstanding the fact that the cause of his involvement was defendant's contempt of court, for an acceptable basis upon which to calculate reasonable reimbursement for the plaintiffs is lacking. The court is therefore constrained to deny their application as to him, albeit with a reminder that fees for attorneys once were considered more than adequate [11] to also compensate all who work for them in the pursuit of justice.

### III

Again, with the conclusion of that pursuit still the goal in these cases, supplemental orders in addition to and accordance with this memorandum and order will issue. The Clerk of the Court shall return

---

**10.** Defendant's Supplemental Opposition to Plaintiff's Application for Attorneys Fees and Expenses, p. 1.

**11.** This can be especially true when they represent sizeable shares of monetary recoveries. It is also true that receipt or expectation of such

contingent fees do not preclude awards under 28 U.S.C. § 2412(b), which, as the court pointed out in slip op. 92–58, page 26, are "punitive", quoting Lear Siegler, Inc., Energy Prods. Div. v. Lehman, 842 F.2d 1102, 1107 (9th Cir.1988).

the original Client/Case Service Record to Steven R. Sosnov.

So ordered.