**In re CINCINNATI GAS & ELECTRIC COMPANY SECURITIES LITIGATION.**

**Master File No. 83–1721.**

United States District Court,
S.D. Ohio, W.D.

June 3, 1986.

See also 594 F.Supp. 233.

Stanley M. Chesley, Waite, Schneider, Bayless & Chesley Co., L.P.A., Gene Mesh Co., L.P.A., Cincinnati, Ohio, for plaintiffs.

William R. Hardy, Cincinnati, Ohio, for Sandord Brooks, Donald Lowry, William Rowe, George Juilfs, Neil Armstrong and Elmer Best.

Robert G. Stachler, Cincinnati, Ohio, for Cincinnati Gas and Elec. Co.

Robert A. Pitcairn, Jr., Cincinnati, Ohio, for Earl Borgmann.

Douglas G. Cole, Cincinnati, Ohio, Robert B. Fiske, Jr., New York City, for William Dickhoner and John Yeager.

John W. Beatty, Cincinnati, Ohio, for Henry J. Kaiser Co. and Raymond Kaiser Engineers, Inc.

## OPINION AND ORDER REGARDING PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEYS' FEES AND DISBURSEMENTS

SPIEGEL, District Judge:

This matter came on for hearing on December 23, 1985, for an award of attorneys' fees and disbursements on the joint application of counsel for plaintiffs in the within action: Berger & Montague, P.C. (the Berger firm); Abbey & Ellis (the Ellis firm); Waite, Schneider, Bayless & Chesley Co., L.P.A. (the Chesley firm); and Gene Mesh Co., L.P.A. (the Mesh firm) (doc. 52). The joint fee application is for attorneys' fees in the sum of $2,500,000, plus reimbursement of out-of-pocket expenses in the sum of $59,905.69. The $2,500,000 figure represents $848,831.95 in straight-time, increased by a multiplier of approximate 2.95 or 295%. Each law firm requesting fees and disbursements furnished an affidavit spelling out the services performed, the hours spent, the qualifications possessed, and the out-of-pocket expenses incurred. At no time has anyone objected to the amounts requested in the instant application. We observe for the record that contained within the requisite notice mailed to all class members was this statement:

> Plaintiffs' Counsel shall apply for attorneys' fees not exceeding 20% of the $13,990,000 total Settlement Funds ... plus the reimbursement of Plaintiffs' expenses to the date of hearing, excluding those of Notice and Settlement Administration, incurred prior to or subsequent to the hearing not exceeding $60,000, together with interest on such requested fees from the date the Settlement Funds began to earn interest until the date paid, at the same average rate as earned on the Settlement Funds.

Class members were advised additionally that they could inspect the documents filed in this case at the Office of the Clerk of the United States District Court, Southern District of Ohio. Finally, they were informed that they could "appear in person or by counsel and be heard to the extent allowed by the Court in support of, or in opposition to, the fairness, reasonableness and adequacy of the Settlement." It will be noted that the attorneys' fees sought amount to approximately 18% (and thus less than 20% of the total settlement funds and that the reimbursement for out-of-pocket expenses sought is slightly less than $60,000.

■ The background of this class action has been chronicled sufficiently in the Affidavit of Ralph L. Ellis in Support of Joint Petition of Plaintiffs' Counsel for Attorneys' Fees and Reimbursement of Costs and Expenses (Ellis Aff.), ¶¶ 10–24, as well as by the Court in our Order Granting Motion to Certify (doc. 32). Accordingly, we will proceed directly to our discussion concerning an appropriate fee in this case. This litigation presents the situation of a "common fund" case. Plaintiffs' joint application for fees and costs sets forth a fair statement of the law regarding such cases. Common fund case awards in class actions

customarily are expressed in terms of a percentage of the benefit created; typically the percentages range from 20%–50%. *See, e.g., In re Warner Communications Securities Litigation,* 618 F.Supp. 735, 749 (S.D.N.Y.1985). Thus, the near–18% figure sought by no means is out of line. The factors that our parent circuit has directed we consider in formulating an award are stated in *Ramey v. The Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir.1974), *cert. denied,* 442 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975). They are as follows:

> (1) the value of the benefit rendered to the corporation or its stockholders, (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved in both sides.

*Id.* at 1196. Having considered the merits of the joint fee application submitted by plaintiffs' attorneys, we conclude that counsel should be compensated for all hours logged and at the hourly rates requested. Further, we believe that award of a multiplier is appropriate, although we decline to award one as high as that requested. Our reasons for so ruling will be explained within the balance of this Opinion and Order.

There is no question that both the corporation itself, in addition to its stockholders, greatly benefited from the settlement that plaintiffs' attorneys negotiated. A substantial settlement of nearly $14,000,000 was approved by this Court on January 2, 1986. And, perhaps as important, CG & E's management was freed from the time requirements of and strain concomitant to this lawsuit that was commenced back in October 1983. Moreover, the community is a winner as well when such a lawsuit is concluded with the requisite Court approval. CG & E is a utility company whose operations affect, at a minimum, all who reside and/or work in the Greater Cincinnati area. This lawsuit grew out of the alleged mismanagement of the William H. Zimmer Nuclear Power Station (Zimmer), a project borne out of our nation's concern to provide for future sources of power. Naturally society has an interest in seeing that attorneys who bring such lawsuits be compensated to insure such future representation should it be appropriate in other instances, an interest of which this Court is cognizant.

The remaining four factors identified in *Ramey* relate not only to an award of attorneys' fees in general, but also to whether, in particular, a multiplier ought to be applied to the lodestar amount the Court finds to be awardable. Accordingly, our subsequent discussion will reflect this overlay.

Counsel have provided the Court with helpful charts summarizing the hours logged and the rate requested by each of the attorneys involved in this case,[1] as well as other information detailing their status professionally and within their respective firms. This Court does not doubt that the hours requested accurately reflect the number spent toward advocating plaintiffs' cause. Review of the voluminous documents in this case alone required, in addition to resolute perseverance, an acquired skill that enables one to weed out information not pertinent and organize that which remains into degrees of importance. Digestion of voluminous materials, subsequent assessment of which avenues require pursuit, and eventual command of the facts that would have been elicited at trial are no inconsequential feat and, without question, deserve ample compensation.

In sum, all counsel spent a total of 6,509 toward prosecution of this case. Contained within the totals listed was an estimated

---

**1.** The Mesh firm has provided the Court with more detailed information, specifically for the purpose of demonstrating to the Court that it is not "double charging" hours that related both to the instant class action as well as the derivative action, *see Efros v. Dickhoner,* C–1–82–1310, that arose out of the Zimmer debacle.

amount of time that would be spent through the conclusion of the December 23 hearing. The Court, upon consideration, believes the estimates submitted to be reasonable; thus, all petitioned-for hours will be compensated.

■ Two of the four firms disclosed that none of the time listed was devoted to preparation of the fee application. Considering the conflict inherent in any application for attorneys' fees to be paid out of a common fund created, *see Court Awarded Attorney Fees*, Report of the Third Circuit Task Force 21–22 (A. Miller, reporter Oct. 8, 1985), we consider their stance and disclosure thereof admirable. Of course, that the Chesley and Mesh firms failed to make a like disclaimer may be the result of an oversight rather than an indication of a deliberate inclusion of fee petition hours in their composite fee applications. But assuming the Chesley and Mesh firms in fact included hours devoted to the fee petition, we have held that such hours are compensable in common fund cases. *Efros v. Dickhoner*, No. C–1–82–1310, doc. 93 at 6–8.

We are satisfied that the petitioning firms are experts in sophisticated corporate litigation, and merit their designations as "national" law firms wherein partners and associates charge and receive national fee schedule. Two comments, however, will be interjected. First, concerning the Berger firm, the Court noticed that 41.5 hours were logged by unspecified attorneys for which the firm seeks compensation at a "blended" rate of $175.00 per hour. Without knowing the background and experience of these lawyers, we consider an award of $175.00 per hour somewhat rich. The better approach, we believe, would be to compensate these unidentified attorneys at the lowest hourly rate listed among the Berger attorneys, or $95.00 per hour. Second, with respect to the Ellis firm, its "Firm Biography" provokes some confusion insofar as the second sentence recites that "[t]he services of Abbey & Ellis in this litigation were principally performed by Stephen T. Rodd." This is the Court's first introduction to Mr. Rodd whose name no-

where appears on the time charts submitted. Later in the firm biography, we read that "[t]he services performed in this litigation were principally carried out by me [Ralph Ellis], my partner, Arthur N. Abbey, associate Jill S. Abrams and paralegals Emily Komlossy and Nancy Kaboolian." These latter individuals, more familiar to the Court, are those listed on the submitted time charts. We trust that reference to Mr. Rodd was an error and we therefore shall ignore it.

■ Remaining for decision as to fees is what, if any, multiplier might be awarded to plaintiffs' counsel. While we decline to award the 2.95 figure proposed by plaintiffs' counsel, we nonetheless think award of a multiplier is in order. Without belaboring the point, we reiterate our acknowledgement of the acumen and national reputation of plaintiffs' counsel. Additionally, this case was accepted on a contingent fee arrangement, and counsel have waited a considerable amount of time not only for fees but also for reimbursement of costs. We note, too, that this case is one in which settlement was pursued early on, a tactic that merits encouragement, as does counsel's exceptional negotiating skill. But this case, like the *Efros* derivative suit previously filed, involved pouring through reports of various agencies that investigated the Zimmer problem. Counsel for plaintiffs themselves chronicle the vast array of material available to them. *See* doc. 51 at 5–6. As we earlier acknowledged, to review and digest these documents was no insignificant task. The Court's view, however, is that the materials reviewed by counsel provided them, like the *Efros* attorneys, with the heart and substance of their lawsuit and obviated the necessity of counsel to do much digging on their own. That counsel seized upon a then-available opportunity merits reward, but not of the same magnitude as should be granted when counsel start from scratch and essentially create an opportunity. Counsel's discovery duties entailed scrutiny of the very thorough "discovery" accomplished by others. In good conscience, we cannot award a

percentage similar to that we would consider to be appropriate for attorneys who brought their lawsuit from the ground floor up.[2] Our use of a lower multiplier than that requested to reduce the overall fee, and thus the lawyers' percentage of the common fund created, is in response to their concern. Our comments are made not for the purpose of disparaging counsel in any fashion, but simply to draw a distinction. It is creative lawyering that will earn the higher fee award from this Court, as it represents the hallmark of a gifted professional. Counsel herein conducted themselves with the utmost competence and achieved significant results. They have served their clients, in addition to their profession, well. Their work, however, lacked the creativity necessary to merit the percentage award that they seek.

■ Having carefully thought out the matter, we believe that a percentage award of approximately 15% is appropriate in this case. No doubt counsel are aware that in the *Efros* derivative action, exclusive of interest and costs, the composite fee eventually awarded to all counsel yielded a sum in excess of 11% of the settlement fund created. We pronounced said sum "low" in comparison to other fees being awarded around the country, but fair "given the 'discovery' advantage with which counsel were blessed at the onset of th[e] litigation." *See Efros*, No. C–1–82–1310, doc. 93 at 19. The additional four percentage points we award in the instant case result from counsel's efforts to defeat the motion to dismiss filed by the Kaiser defendants,[3] in addition to the lack of any objection registered against the application for fees.

■ Counsel may question why the Court has delayed in issuing its fee award in this common fund case or has undertaken such a detailed analysis. To articulate our response, we borrow from the words of Professor Miller:

Another difference between fund-in-court and statutory fee cases in that *in the former category there is a greater need for the judge to act as a fiduciary for the beneficiaries (who are paying the fee), particularly in the class action situation, because few, if any, of the action's beneficiaries actually are before the court at the time the fees are set. Judicial scrutiny is necessary inasmuch as the fee will be paid out of the fund established by the litigation, in which the defendant no longer has any interest, and the plaintiff's attorney's financial interests conflict with those of the fund beneficiaries.* As a result, there is no adversary process that can be relied upon in the setting of a reasonable fee. In statutory fee cases, however, the losing party who will pay the fee is before the court, thus obviating any need for special judicial involvement. Arguably, all the judge need do is rule on the fee application based on the competing presentations of the adversaries.

*Court Awarded Attorney Fees*, Report of the Third Circuit Task Force 21–22 (A. Miller, reporter Oct. 8, 1985) (footnote omitted) (emphasis ours). We wish to send a message to the Bar and the community to the effect that the Court, in the discharge of its duty, no matter how tempting from a docket-management perspective, cannot rubber stamp attorneys' fees applications. Those who eventually are awarded fees may be assured that we have scrutinized their petitions and duly recollected the quality of the legal services provided; those who are called upon to "pay" the fees awarded, it is to be hoped, will take com-

2. On their behalf, counsel point out that "despite the substantial amount of publicity surrounding this matter, no other lawsuits were initiated by private investors or the Securities and Exchange Commission charging violations of the federal securities laws." *See* Memorandum of Law in Support of Plaintiffs' Application, doc. 52 at 17. While we accept counsel's statement, it does not serve as a foil to the Court's view that counsel benefited tremendously from the prepared studies available.

3. As alluded to in our initial opinion on fees in *Efros*, and in contrast to the present situation, we never were called upon in that case to rule on a significant pretrial motion. *See Efros*, No. C–1–82–1310, doc. 88 at 9.

fort in our conservative, even stingy, approach in depleting the fruits of the litigation brought on their behalf.

In light of the foregoing, we hereby make the composite fee award of $2,096,784.20, which breaks down as follows:

| Berger & Montague, P.C. | | | | $705,029.90 |
|---|---|---|---|---|
| S.R. Wolfe | 404.50 × | $215/hr. = | $ 86,967.50 | |
| J.R. Stiefel | 142.25 × | 175/hr. = | 24,893.75 | |
| G.E. Cantor | 37.00 × | 175/hr. = | 6,475.00 | |
| R.V. Johnson, Jr. | 127.50 × | 100/hr. = | 12,750.00 | |
| K.S. Orman | 1,445.25 × | 95/hr. = | 137,298.75 | |
| Other Attorneys | 41.50 × | 95/hr. = | 3,942.50 | |
| Law Clerks/Paralegals | 265.75 × | 45/hr. = | 11,958.75 | |
| | | | $284,286.25 | |
| | | | × 2.48 | |
| | | | $705,029.90 | |

| Abbey & Ellis | | | | $525,282.60 |
|---|---|---|---|---|
| Arthur N. Abbey | 227.25 × | $275/hr. = | $ 62,493.75 | |
| Ralph L. Ellis | 151.75 × | 275/hr. = | 41,731.25 | |
| Jill S. Abrams | 726.50 × | 140/hr. = | 101,710.00 | |
| Paralegals | 130.50 × | 45/hr. = | 5,872.50 | |
| | | | $211,807.50 | |
| | | | × 2.48 | |
| | | | $525,282.60 | |

| Waite, Schneider, Bayless & Chesley, Co., L.P.A. | | | | $556,171.00 |
|---|---|---|---|---|
| S.M. Chesley | 199.00 × | $200/hr. = | $ 39,800.00 | |
| P.B. Allen | 190.75 × | 165/hr. = | 31,473.75 | |
| D.A. Rabourn | 28.00 × | 135/hr. = | 3,780.00 | |
| K.G. Hawley | 816.00 × | 135/hr. = | 110,160.00 | |
| N.J. Roth | 40.75 × | 90/hr. = | 3,667.50 | |
| M.C. Midei | 148.00 × | 90/hr. = | 13,320.00 | |
| Paralegals | 490.25 × | 45/hr. = | 22,061.25 | |
| | | | $224,262.50 | |
| | | | × 2.48 | |
| | | | $556,171.00 | |

| Gene Mesh Co., L.P.A. | | | | $310,300.70 |
|---|---|---|---|---|
| Gene Mesh | 129.25 × | $225/hr. = | $ 29,081.25 | |
| Richard S. Wayne | 369.00 × | 160/hr. = | 59,040.00 | |
| Mark Huller | 268.75 × | 100/hr. = | 26,875.00 | |
| Jean Bendon | 112.50 × | 90/hr. = | 10,125.00 | |
| | | | $125,121.25 | |
| | | | × 2.48 | |
| | | | $310,300.70 | |

■ In addition, because we find the actual and estimated listed disbursements to be reasonable, we hereby make a composite costs, or reimbursement for out-of-pocket expenses, award of $59,905.69. We will leave it to counsel to divide this sum as appropriate. We note for the record that the expense amounts listed for each firm, when totalled, exceed the figure sought; additionally, the Mesh firm figures for the individual expense categories, when totalled, slightly exceed that total listed. Perhaps the discrepancies simply are a function of typographical errors. In any event, we think it appropriate to limit reimbursement to counsel to the exact composite figure sought rather than the higher overall sum of the individual firm totals.

■ Finally, in ¶ 26 of the Ellis affidavit, counsel request "a proportionate share of interest earned on the settlement fund from the date the settlement fund began to earn interest until the date paid." We previously have ruled such receipt of interest on an attorneys' fees and costs award is permissible. *See Efros*, No. C–1–82–1310, doc. 93 at 14–16. Here counsel have asked for interest only on their fees award; accordingly, no interest will be awarded as to costs. Each firm thus shall receive that percentage of the interest accrued that represents the percentage of the common fund that it will receive by virtue of our award of attorneys' fees—for example, if the attorneys' fees awarded to the Berger firm is equal to x% of the common fund, then counsel shall receive x% of the interest that the common fund has accrued since the fund began to earn interest.

## CONCLUSION

In sum, plaintiffs' joint application for an award of attorneys' fees and disbursements is GRANTED IN PART. Counsel are awarded $2,096,784.20 in fees, to be divided as previously specified, and $59,905.69 in costs, to be divided between the four firms as appropriate. Additionally, each firm shall receive that portion of the interest accrued on the common fund that corresponds with the percentage that the fees awarded to each firm represents of the common fund.

SO ORDERED.