**William WISE, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**Frank P. POPOFF and The Dow Chemical Company, Defendants.**

No. 90–CV–10186–BC.

United States District Court, E.D. Michigan, N.D.

March 25, 1993.

Gene A. Farber, Bieri, Bernstein, Detroit, MI, Karen Orman, Philadelphia PA, for plaintiff.

Chaim T. Kiffel & William R. Jentes, Kirkland & Ellis, Chicago, IL, Paul W. Heil & Tina Van Dam, Dow Chemical Co–Legal Dept., Midland, MI, for defendants.

## ORDER GRANTING ATTORNEY FEES AND COSTS

CLELAND, District Judge.

This matter is before the Court on the application for attorney fees filed by plaintiffs' counsel for services rendered to the class. The pending litigation has ended with a settlement of the plaintiffs' claims, which involved the creation of a common fund of $2,450,000 from which the class claims are to be paid.

The class action complaint was filed on July 26, 1990, and was conditionally certified as a class action on June 19, 1991. On October 15, 1991, the parties, recognizing the expense and length of continued proceedings necessary to prosecute and defend the action, agreed to settle the case. A settlement hearing was held on January 23, 1992, and a final order approving the settlement was entered June 16, 1992. The request for fees has been kept pending—intentionally—for considerably longer than is ordinary in such matters. The delay reflects the Court's deep concern about the manner in which the case began, and about the structure of appropriate fees, all explained more fully below.

Class counsel requests a fee in the amount of $735,000.[1] Counsel argues that this amount is reasonable whether calculated under a "percentage of the common fund" method or a "lodestar with a multiplier" method. Counsel for defendants agreed, as a condition of settlement, to remain silent on class counsels' petition for fees. Upon review of this application, the Court agrees that the petitioning law firms are entitled to an award of fees. However, for the reasons explained below, the Court finds that the amount sought is excessive. A substantially reduced award is appropriate.

## BACKGROUND

The complaint alleged that Frank P. Popoff, Dow Chemical Company's President and Chief Executive Officer, engaged in, and aided and abetted, a course of conduct of knowingly or recklessly issuing a series of material misrepresentations or failing to state material facts regarding the condition of Dow, thereby inflating the price of Dow common stock. (Complaint ¶¶ 5, 12–20, 23, 25–30). As a result of the alleged misrepresentations and nondisclosures relied upon, plaintiff and the would-be class members contended they bought stock which they otherwise would not have bought. (Complaint ¶¶ 28, 29). The price of Dow stock fell on Tuesday, July 24, 1990, when Dow's second quarter earnings were announced. One day intervened and this class action suit was filed on Thursday, the 26th.

Defendants moved to dismiss the complaint, contending the named plaintiff had failed to properly plead fraud under Rule 9(b) of the Federal Rules of Civil Procedure. Defendants specifically argued that the complaint failed to describe the particular facts that were alleged to have been known by them that made any of Popoff's statements untrue or that he recklessly disregarded. The statements, they argued, were not fraudulent on their face. Defendants further claimed that the named plaintiff was not entitled to rely on statements made after he purchased his stock in stating a claim for fraud.

Noting that there was no self-dealing alleged, and even though the statements did not appear to be in any way fraudulent, the Court took account of the liberal pleading standards in the Sixth Circuit concerning Rule 9(b)'s "particularity" requirement, and was constrained to deny defendants' motion to dismiss.[2] Finding that the complaint alleged the time, place and contents of the alleged misrepresentations, and with the allegations taken as true, the Court concluded that the complaint properly notified defendants of the claims against them. The Court noted that discovery had not yet commenced and determined that it would be inappropriate to dismiss the complaint without first giving the named plaintiff the opportunity to flesh out his claim. The plaintiff was noti-

---

1. Class counsel also seeks reimbursement of $73,164.92 in costs. Thus, the total amount requested is $808,164.92.

2. The Court did, however, dismiss plaintiff's "aider and abettor" liability count for failure to state a claim.

fied, however, that the Court was ready to impose sanctions should discovery reveal that defendants were accused of fraud without a reasonable factual basis.

On March 8, 1991, plaintiff filed his motion for class certification under Rule 23, Fed. R.Civ.P. He sought to certify a class of persons who purchased Dow common stock from April 24, 1990 to July 23, 1990. The Court found that numerosity, typicality, and commonality factors were satisfied.

However, the Court determined that plaintiff would not be an adequate representative for a class that contained investors who purchased after he did. Weighing greatly in the Court's determination were the events leading up to the filing of this action, which, as gathered from plaintiff's deposition testimony, are summarized as follows:

Plaintiff lived in Delaware and was the owner of fifty shares of Dow worth less than $3,000. He received a call from his stock broker shortly after the Dow stock went down in value, informing him of the drop and suggesting that he might have a cause of action against Dow. An attorney, James Orman, was recommended by the broker. Plaintiff telephoned and spoke with attorney Orman shortly thereafter. The conversation lasted only a few minutes, with plaintiff expressing the stock price concern related to him by his broker.

On the second day thereafter, without even an explanatory telephone call to plaintiff, or anything else informing him of the nature of the complaint [3]—i.e., the allegations of fraud and misrepresentation—this suit was filed, signed by four law firms, with none of which plaintiff had earlier had any contact and with which attorney James Orman was in no way associated.

The Court concluded that plaintiff Wise would more properly represent a class much smaller than that which he had requested. A class was conditionally certified to include all persons who purchased Dow common stock on the open market during the period beginning April 20, 1990 and ending April 26, 1990,

inclusive, except for directors of the Dow Corporation. The parties were informed that the certification was subject to review upon further development of the record, including the possibility of subclasses, modification, or decertification.

### DISCUSSION

■ An award of attorneys' fees and expenses lies within the discretion of the trial court. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir.1974), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975).

An attorney's role changes once he files a fee petition. No longer a fiduciary for his client, he becomes nothing more complex than another claimant against the fund created for the client's benefit. The court must, in turn, become "the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications." *Skelton v. General Motors Corp.,* 860 F.2d 250, 253 (7th Cir. 1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). A court should not "rubber stamp" fee applications. *In re Cincinnati Gas & Electric Co. Securities Litigation,* 643 F.Supp. 148, 152 (S.D.Ohio 1986). The fact that the settling defendant may agree with the fee application (or, as in this case, be persuaded to remain silent about it) is irrelevant to the Court's analysis because the defendant, having already paid the settlement amount, has little interest in the portion of the fund that the class attorney is allowed to retain.

In determining a reasonable attorney fee, courts generally employ one of two methods. The "lodestar" approach calculates a lodestar amount by multiplying the number of hours reasonably expended by counsel by the reasonable and customary hourly rate of the attorney. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Boddy v. United States Bankruptcy Court (In re Boddy),* 950 F.2d 334, 337 (6th Cir.1991). This base figure can then be increased or decreased by a multiplier in order

---

**3.** Plaintiff's deposition testimony revealed that, of the items which made up the bulk of the complaint, he had not seen any document or read any statement attributed to defendants until he was handed them at the deposition.

to reflect a number of considerations including risk and complexity of issues.

More commonly, however, fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created. *See In re Cincinnati Gas & Electric Co. Securities Litigation*, 643 F.Supp. at 150. An attorney who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to "reasonable" attorney's fees and expenses payable from that fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–79, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir.1983); *Basile v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 640 F.Supp. 697, 699–700 (S.D.Ohio 1986). The Sixth Circuit has not addressed the question of which of these approaches *must* be employed in securities fraud/common fund cases.

### A. Common Fund

■ The factors relevant to an award of attorneys' fees from a common fund in this Circuit have been clearly established. As the Sixth Circuit stated in *Smillie*, the relevant considerations are: (1) the value of any benefit rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of all counsel. *Smillie*, 710 F.2d at 275; *accord Ramey*, 508 F.2d at 1196; *Basile*, 640 F.Supp. at 700; *see also Thompson v. Midwest Foundation Independent Physicians Ass'n*, 124 F.R.D. 154, 162 (S.D.Ohio 1988). An examination of each of these factors as applied to the present case supports approval of only a portion of class counsel's application.

The factors weighing in favor of granting an attorney's fee in this case number two: 1) the professional skill and standing of all

counsel and, 2) the fact that services were rendered on a contingent fee basis. From its examination of the pleadings, from its recollection of the formal preparedness of counsel at the oral presentation of motions, and from a review of other material[4], the Court acknowledges the professional skill of class counsel. The Court recognizes also the risk of absolute non-payment assumed by class counsel in prosecuting this action. However, in light of the remaining factors considered, these do not persuade the Court that a fee award in the amount requested is warranted.

Firstly, the value of the benefit to the class, although it is to be calculated from a gross amount of a $2,450,000 settlement fund, is pale indeed when viewed in light of the fees counsel seek. Assuming full attorney's fees and expenses were to be awarded to counsel and the maximum amount of notice and administrative costs and fees were used, the loss per share would equal only 38.12¢ per share. Multiplying this figure by 1,258,-196, which is the number of shares involved in totally valid claims, the total payments to all authorized claimants would be $479,-624.31. Under this scenario, attorneys fees and costs would tower almost 169% over the financial "benefit" to the class, which would be greatly increased if the Court were to exercise its discretion and award lesser attorney fees, or costs, or both.

Further, the Court does not believe that "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others" weighs heavily in favor of a large attorney fee award in this case. The bases of the claims made against the defendants, although minimally sufficient under Rule 12 analysis, were indefinite and speculative, founded as they were in CEO Popoff's earlier 1990 speeches forecasting the company's and the industry's economic future. There was no insider trading alleged, and none detected. The defendant did not in any conceivable way benefit. There was, in class counsel's words, "no smoking gun." (Affidavit of Karen S. Orman, January 10, 1992, page 14). If it were not for the lenient

---

4. Class counsel submitted a number of favorable comments recorded by judges of other courts upon the firm's performance in other cases.

pleading standards employed in the Sixth Circuit, this case would almost certainly have been dismissed early on. As a general proposition, in the Court's opinion, society does not benefit from lawsuits which are based upon conjectural claims and aimed at the corporate treasury. The result in this case was to present the defendant with Hobson's choice: expend great sums of money to proceed with discovery concerning and to defend against a gauzy complaint, or expend lesser (but substantial) sums to settle. The Court believes that volumes are spoken about the fundamental merit of a case such as this when no other stockholder brings suit based upon any of the statements, alleged to be misrepresentations, serving as foundation for the litigation. It was determined early on that 4,031,200 shares were traded during the class period. Only 426 totally valid claims were filed representing 1,258,196 shares. It is beyond peradventure to observe that the majority of *all* owners of Dow common stock did *not* benefit from this litigation. Beyond that, fewer than one in three of even that small number who purchased or sold during the abbreviated class period became involved. Rather, $2,450,000 has been extracted from the company, and will trickle along in dimes and quarters to a few of those who were holders of shares during the class period. The class attorneys, meanwhile, will deposit to the credit of their corporate and individual accounts tens to hundreds of thousands of dollars. The absence of the settlement amount on the company's books is ultimately to be reflected in a lower return on the individual investments made by all shareholders. In this case, the Court will not award fees based upon a percentage of the total fund created.

### B. Lodestar

Under the lodestar method, the burden is on the attorney/petitioner to establish that the fees charged reflect the value of services at a fair market value. Here, class counsel has submitted a chart on behalf of Berger & Montague, P.C., which seeks attorney fees totalling over $301,000. The bulk of that amount results from 830.7 hours claimed by the firm's associate attorneys Orman and Markey at a rate of $265 per hour. Counsel,

however, has failed to demonstrate that leading Philadelphia law firms charge more than $205 per hour for associates' time. Accordingly, the fee requested will be reduced by $49,842. Additionally, $3,457.50 was billed representing 10.4 hours of work performed by a number of unspecified attorneys at $332 per hour. A similar application was made by Berger & Montague, P.C. in *In re Cincinnati Gas & Electric, supra.* There, the court calculated the unidentified attorneys' time at the lowest billing rate listed. The Court is persuaded that the result should be the same here. The fee requested will thus be reduced by $1897.50.

■ In further analyzing the fee petition, the Court finds that over 247 attorney hours were billed at various rates totalling over $55,516 for the "preparation and drafting of [the] motion for class certification, supporting and reply memoranda, etc.; and discovery regarding class action issues." It is simply inconceivable that this amount of time— the equivalent of six forty-hour work weeks for one highly-skilled attorney billing at the imposing rate of $225 per hour—would be required to prepare and draft a motion, a supporting brief limited to 20 pages and a 5-page reply. The Court's doubt is magnified when the Court considers that this work is attributed to counsel as experienced in securities class action litigation as the biographies accompanying the fee petition would seem to indicate. The time claimed does not include over 88 hours separately billed by paralegals and law clerks nor does it include travel to Bay City to argue the motion; both latter items are billed under separate categories. Counsel does not document what type of discovery was required regarding the class action issue nor how much of the time billed involved such discovery. Neither is it clear what services and time expenditures were required for the category labeled "etc." although counsel presumably meant to include in this the preparation of motion-supporting documents of a type similar to "memoranda."

In short, the amount claimed is clearly excessive. The Court concludes that a maximum of 175 hours—more than one month— of highly qualified, experienced attorney time would more reasonably demonstrate the time required for these services. Even without

any reduction of the hourly rate imputed to these activities, this recalculation results in a reduction of $16,246.50 from the fee requested.[5]

Reductions from counsels' lodestar calculation therefore total $67,986.00. The reduced lodestar, $288,986.00, more appropriately reflects the fee due than the actual amount claimed. The case fundamentals, as noted, are not complex, and a multiplier is not in order. The Court specifically rejects any contention that the case should be adjudged "difficult" simply because the basis of the claim itself was highly speculative and resulted in a settlement.

Based on the foregoing, the total award to class counsel calculated under the lodestar method is $362,150.92, representing $288,986.00 in attorney fees and $73,164.92 in costs.

### C. Comparison between "Common Fund" and "Lodestar"

■ Although the Supreme Court has authorized courts to award attorney's fees based on the entire fund, *Boeing Co. v. Van Gemert*, 444 U.S. at 478–9, 100 S.Ct. at 749, the Court notes that such a method is not mandated. The Court determines that a more reasonable fee results from calculating a percentage of the actual recovery. Based on the number of valid claims filed, and pursuant to the agreed upon formula for determining recognized loss per share, a fee award of $288,968.00 would amount to 45.3% of the total recovery for the class. Considering the costs of prosecuting the case, the Court judges this percentage of the net recovery to the class not unreasonable.[6] The Court finds that an attorney fee award of $288,986.00 is appropriate under both the lodestar and the percentage of the fund/recovery approaches.

### CONCLUSION

This case embodies in jurisprudential terms the rough equivalent of a U.S. Army "MRE" (Meal, Ready to Eat). This was an

---

5. The total dollar amount billed, $55,516.50, divided by the number of hours claimed, 247.4, yields an effective per hour rate of $224.40 for time spent preparing and drafting the motion for class certification. 175 hours at $224.40 per hour equals $39,270. The difference between this amount and the amount billed equals $16,246.50. An alternate formulation would be equally suitable: dividing the *originally* listed number of hours into the *reduced* fee would re-

sult in an imputed hourly rate of almost $160 per hour, an amount which the Court finds to be entirely consistent with reasonable hourly attorney fees of experienced counsel. With an hourly rate of $160 and annual billable hours exceeding 2,000, the attorney's gross income progresses well beyond $300,000.

6. In reaching this figure, the Court calculates the total recovery for the class as follows:

| | |
|---|---|
| Settlement Consideration | $  2,450,000.00 |
| Less: | |
| Costs & Fees for Notice And Settlement Administration | −      43,703.02 |
| Attorney Costs | −      73,164.92 |
| Attorney Fee Award | −    288,986.00 |
| Distributable Consideration: | $  2,044,164.16 |
| Divided by Total Shares Traded During the Class Period | ÷ |
| | 4,031,200 |
| Loss Per Share | $          .507 |
| Times Number of Shares from Valid Claims Timely Filed | × |
| | 1,258,196 |
| Net Recovery For the Class | $      637,905.31 |

"LRF"· (a Lawsuit, Ready to File). It was pre-packaged, it was complete, and there it sat, compressed in the hard disk memory of a lawyer's word processing computer, anxiously awaiting the approach of a trusting shareholder who would not object to his or her name being used to fill the only blank, the one labeled "PLAINTIFF."

In due consideration of all the proceedings in this case, the Court is compelled to agree with the conclusion stated by Judge Duniway in his concurring opinion in *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226 (9th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975):

> The real bonanza in a case like this, if it is won, will go to counsel. * * * I venture to suggest that none of the class action features of this case was dreamed up by the named plaintiffs, but that all of them are the brain children of their attorneys.

Id. at 237–38.

The record made herein virtually demands such an observation. Only two days expired between the moment that Wise was telephoned in Delaware by his broker and the time that the 15–page complaint was filed in Bay City, Michigan, by law firms with which Wise had never had contact. The plaintiff's name was misspelled on all the initial pleadings. Even assuming that the complaint was filed by overnight or "express" delivery, it is preposterous to think that even a cursory factual investigation of the claims made could have been accomplished by counsel within a such a short time span *after* the matter came to Wise's attention[7]. Wise admitted that he had not seen the complaint nor ever been apprised of the allegations contained in it before filing. In fact, he did not see the complaint until several weeks after it had been filed. He did not meet, or even speak with, the woman appearing as his attorney and counsellor, Karen Orman[8] until April 28, 1991. This was approximately 9 months after the conversation with his broker and, of course, long after suit was filed.

There exist many good reasons to support the use of class action lawsuits. The Court acknowledges the wisdom of the judge who wrote

> [I]n a large and impersonal society, class actions are often the last barricade of consumer protection ... The consumer class action is an inviting procedural device to address frauds that cause small damages to large groups. When brought by plaintiffs who have no other avenue of legal redress, the consumer class action provides restitution to the injured and deterrence to the wrongdoer.

*Gordon v. Boden,* 224 Ill.App.3d 195, 166 Ill.Dec. 503, 509, 586 N.E.2d 461, 467 (1991). This case, however, does not exemplify that lofty ideal. Though the fee awarded here may seem to some observers very generous, it would be a gross mistake for anyone to interpret it as a sign of approval by this Court of the approach—the "LRF"—employed by class counsel here.

Accordingly, the Court grants class counsel's motion for fees and costs but reduces the amount petitioned for. A separate order will be entered awarding fees and costs in the amount of $362,150.92.

---

7. The billings submitted by class counsel provide absolutely no guidance on this issue because they present an essentially undifferentiated accounting. For example, the hours attributed to preparation of the complaint are combined with those for preparation of "motions." Also, no information is given as to exactly *when* the hours were charged to the account, nor can the Court tell within what span of time the hours were supposed to have been expended.

8. It was asserted on the record by attorney Karen Orman that she is not related to the original attorney, James Orman, who was said to have been recommended by Wise's broker. Very early on, James Orman had forsaken further connection with the case.